## ULRICHS· v. PHŒNIX HORSE-SHOE CO.[1]

*(District Court, S. D. New York. April 30, 1888.)*

**SHIPPING—UNREASONABLE DETENTION—INJURY BY ICE—HALF DAMAGES.**

Libelant's canal-boat was sent to respondent's and consignee's dock, and, by reason of the presence of other boats, and insufficient accommodations for mooring and unloading, was detained, and while thus waiting to discharge was cut through and sunk by ice which formed in the river. *Held,* that respondents were liable for not furnishing reasonable facilities for unloading at that season of the year, under the daily liability of boats to injury from ice; but, as libelant's boat was shown to be old and unfit for any navigation in ice, *held,* following the practice of this court in regard to such boats, where no express notice of weakness is given, that only half damages should be allowed.

[1] Reported by Edward G. Benedict, Esq., of the New York bar.

In Admiralty.
*Hyland & Zabriskie*, for libelant.
*Eugene Smith* and *John A. Deady*, for respondent.

BROWN, J. The respondents engaged one Henry Nelson to transport a quantity of scrap iron from Brooklyn to their dock at Poughkeepsie. Nelson engaged the libelant to take the cargo on board his canal-boat Lizzie and Willie. She was towed up the North river, and on Saturday was left by the tow at respondents' dock, outside of three other canal-boats, which were moored at the end of the dock. The dock was a short one, about 60 feet wide, and the only accommodations to moor or unload were at the end of the dock. Considerable ice soon appeared in the river, and on Wednesday forenoon she was cut through by the ice on her port or outside quarter, while the tide was running strong flood. She was still in the same position, outside of three other boats, awaiting her turn to unload, and, when seen to be sinking, she was cut loose, to avoid carrying down the other boats, and she sank in 30 feet of water, a short distance above. The libelant testifies to several conversations with respondents' agent upon Monday, in which he says that he asked for safer accommodations for his boat; but these conversations are all denied by the respondents' witnesses. Such conversations or complaints would be much less likely to be remembered by the respondents' witnesses than by the libelant. But several circumstances in his testimony, about which he is proved to have been mistaken, prevent full confidence in the accuracy of his recollection; and I have great doubt whether any specific complaints were made before the morning of Wednesday, when it was too late, and the ice too thick, to enable any change to be made in time to be of benefit to the boat. Whether any such previous notice, however, was given or not, I think the respondents must be held liable, under the circumstances, for not furnishing reasonable facilities for the mooring and unloading of the canal boat at that season of the year, and under the liabilities to injury and the danger from ice likely to arise daily. In engaging canal-boats to come up with cargoes to their dock, it was the respondents' legal duty to furnish reasonable facilities for unloading, considering the actual circumstances of the time, the weather, and the season. The ordinary time allowed to unload a cargo of 255 tons, such as the libelant's boat carried, was three days. It could have been unloaded in two had there been no detention from prior boats. But there were three boats ahead of the libelant's; and on Wednesday, when the libelant's boat sank, the first along-side the dock had not yet been discharged, and two others still remained to be discharged. There was no place on either side or adjacent where the libelant's boat could go to discharge, and this boat was thus kept unreasonably in a very exposed situation. The respondents' superintendent had an office in New York, and was within quick telegraphic communication. It was not reasonable or justifiable that boats should be sent up and kept long exposed to the danger of ice at such a dock at that season. The superintendent must have known that the dock was already incumbered by so many other boats that the

libelant's discharge could not be had within a reasonable time.    On the other hand, the libelant's boat was plainly an old and weak boat, unfit for any navigation in ice, or to withstand any severe pressure.    While lying outside of three others, it was most exposed to the force of the ice in the strong flood-tide, and she was cut through where the pressure of the ice would naturally be strongest.    Whether a new and strong boat could have stood the pressure in that exposed situation it is impossible to say.    In analogous cases, as concerns injuries to very old boats, the practice in this court has been to allow half damages only, where no express notice of their weakness is given.    The Reba, 22 Fed. Rep. 546; The Syracuse, 18 Fed, Rep. 828.    Upon the evidence I do not think this boat was worth over $300 cash.    The libelant has received $125 on account of his loss, and I award him half the residue of $175, namely $87.50, with interest and costs.