WHITE et al. v. UPPER HUDSON STONE CO. et al.

BAY DREDGING & CONTRACTING CO. v. UPPER HUDSON STONE CO. et al.

(Circuit Court of Appeals, Second Circuit. December 11, 1917.)

Nos. 58, 59.

1. SHIPPING ⊜⇒54—CHARTERS—DEMISE OF SCOW—LIABILITY OF CHARTERER.

A charterer of a scow, under a charter which is a demise, is a bailee, and prima facie responsible for any failure to return the boat in good order, reasonable wear excepted; and this liability is not discharged by showing that the vessel had been intrusted to the care of another, and injured by that other's negligence, or while in his charge.

2. TOWAGE ⊜⇒11(5)—INJURY TO TOW—LIABILITY OF TUG.

A motorboat, which contracted to tow a scow over a bar upon which the water was of sufficient depth at the proper state of the tide, held liable for injury to the scow by stranding on the bar in the daytime in fine weather, either due to a miscalculation of the tide or to the swell which caused her to pound when in the trough.

3. SHIPPING ⊜⇒58(1)—CHARTERS—ENFORCEMENT OF CHARTERER'S LIABILITY BY INSURER.

The owner chartered a scow by a charter of demise, to be ordinarily employed within the limits of New York harbor. The owner maintained insurance in the form common for harbor traffic; the policy providing that it should be void if the scow was taken beyond the harbor limits. It was agreed, however, between owner and charterer, that it might be taken outside of such limits, if the charterer paid for the additional temporary insurance required, which the charterer did by procuring a rider to be attached to the owner's policy, and subject to its conditions extending the insurance for the particular trip named therein. On one of such trips the scow was injured, and the insurer paid the loss to the owner. Held, that the insurance was for the benefit of the owner, and not of the charterer, and that the insurer, as assignee of the owner, could maintain a suit to enforce the liability of the charterer under the charter party for failure to return the scow in good condition.

Appeals from the District Court of the United States for the Eastern District of New York.

Suits in admiralty by Joseph Leslie White and William D. Quick against the Upper Hudson Stone Company, with Walter H. Gahagan, and the gasoline motorboat Ono, Louis R. Bick, trustee in bankruptcy, claimant, impleaded, and by the Bay Dredging & Contracting Company, by Louis R. Bick, its trustee in bankruptcy, against the Upper Hudson Stone Company and Walter H. Gahagan. Decree for respondents in first suit, and libelants appeal. Reversed as to respondents the Upper Hudson Stone Company and the Ono, and affirmed as to respondent Gahagan. Decree for respondents in second suit, and libelant appeals. Affirmed.

⊜⇒For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

One Bleakley, owner of scow U. H. 44, chartered her to Upper Hudson Stone Company. The contract admittedly amounted to a demise, and made the charterer an owner pro hac vice and a bailee. By the terms of charter the scow was to be ordinarily employed within the limits of New York harbor. Bleakley maintained insurance on his boat in the form common for harbor traffic, insuring him (Bleakley) "on account of whom it concerns, loss, if any, payable to him" against "adventures and perils of the harbors * * * and other waters," within the limits of the harbor of New York. This policy became void if the scow was taken beyond said limits, but it was agreed between charterer and owner that the vessel might be so taken, if the charterer paid for the temporary additional insurance required.

The U. H. 44 was several times sent to Long Beach by the charterer, who each time procured from the insurer a "rider" or (as it is called in the record) a "slip attached to policy" the material words of which are as follows: "In consideration of an additional premium of $14, privilege is hereby granted to the [scow in question] to make present trip to Long Beach and return. Warranted not to use Jack's Inlet. Subject to terms and conditions of policy. Attached to and forming part of Policy No. 6548215"—signed by insurer's agents.

The charterer employed one Gahagan to tow this and other scows to Long Beach. Gahagan's tug, however, was of too great draft to get over the bar, and the motorboat Ono (belonging to the Bay Dredging & Contracting Company) did this work. Just how the Ono was employed and with whom arrangements were made is very uncertain from the record; but, before the accident out of which these suits grew, several of the Stone Company's vessels made the trip, and Gahagan rendered his bill for deep water towing, and the owners of the Ono their bill for towing beyond the entrance bar, and the bills so rendered the Stone Company paid.

In July, 1915, Gahagan's tug took the U. H. 44 loaded to the Long Beach bar, there delivered her to the Ono, and while in charge of the latter vessel she took the ground twice and received very serious injury. She was drawing 6½ feet, and at high tide there was about 8 feet on the bar. Whether the grounding was due to a miscalculation of the tide or to the swell is perhaps uncertain. It was daylight at the time of injury, and the navigation of the Ono and scow was entirely in the hands of the former's master. After the scow was injured, the owners of the Ono devoted considerable time and effort toward her rescue. The insurer paid Bleakley under the policy for the scow's injury, and he assigned his claim against all parties in the premises to the present libelants, who are the insurer's nominees.

For the benefit of the Insurance Company, therefore, libelants brought the first of these suits, seeking to recover against the Upper Hudson Stone Company as charterer and bailee, because the U. H. 44 was not returned in good order and condition, reasonable wear and tear excepted. Under the Fifty-Ninth rule in Admiralty (29 Sup. Ct. xlvi) the Stone Company impleaded Gahagan and the Ono, alleging their negligence, or that of one of them, as the immediate cause of the scow's injury. The second action (tried with the first) is by the trustee in bankruptcy of the Ono's owner, and is an attempt to recover as a salvage award the expenses to which he was subjected in endeavoring to assist the U. H. 44.

The trial court found no fault on the part of the Ono or Gahagan, and therefore dismissed the libel in the first case, and in the second refused any award on the ground that the claim advanced was not salvage. Both libelants appealed.

Alexander & Ash, of New York City (Mark Ash, of New York City, of counsel), for appellants White and Quick.

Lampke & Stein, of New York City (Nelson Zabriskie, of New York City, of counsel), for appellant Bick.

Foley & Martin, of New York City (William J. Martin and George V. A. McCloskey, both of New York City, of counsel), for appellee Upper Hudson Stone Co.

Austin J. MacMahon, of New York City, for appellee Gahagan.

Before ROGERS and HOUGH, Circuit Judges and LEARNED HAND, District Judge.

HOUGH, Circuit Judge (after stating the facts as above). [1] Since the relation between Bleakley, the scow owner, and the Upper Hudson Company, as charterer, was exactly that so recently restated by this court in Hastorf v. F. R. Long, etc., Co., 239 Fed. 852, 152 C. C. A. 638, the charterer was prima facie responsible for any failure to return the boat in good order reasonable wear excepted. The obligation was that of a bailee, and liability was not discharged by showing that the vessel had been intrusted to the care of another, and injured either by that other's negligence or while in such other's charge. Gannon v. Consolidated Ice Co., 91 Fed. 539, 33 C. C. A. 662. Therefore the negligence of Gahagan and the Ono, or of either, was only important because proof thereof would enable the Upper Hudson Company to retrieve from them the loss to which it was subjected by the nature of its contract with Bleakley.

We find it uncertain on the evidence whether there ever was any agreement by Gahagan to tow the respondent's barges all the way into Long Beach inlet or harbor. It may be that he, in the beginning of the work, employed the Ono, or sublet or farmed out to that boat some portion of his towing contract. But before the accident herein a course of business had been established by which both Gahagan and the Ono's owner dealt directly with the Upper Hudson Company; each worked independently for that company; each was a principal. From this finding of fact, it results that there is no evidence of negligence against Gahagan.

[2] As to the Ono, we discover no escape from liability. She assumed the ordinary obligation of a towing vessel; inter alia, to know the recognized channel, the tides, the draft of the tow, and with reasonable skill to judge the weather. While in her care the U. H. 44 pounded and stranded, either because her draft was too great for the bar, or the swell was such that even at highest tide she pounded when in the trough. No matter which story is true, the Ono is liable. If the water was insufficient when calm, her master inexcusably misjudged the tide; if the swell was such as to let the tow pound, he ought to have perceived that such would be the case, for it was daylight and fine weather, and there was no necessity of going over the bar on that particular tide. What was done was negligence under any state of facts suggested. The Eli B. Conine, 233 Fed. 987, 147 C. C. A. 661.

[3] These findings leave the Upper Hudson Company to pay whatever cannot be recovered from the Ono, and require consideration of the contention that these libelants, who may be regarded as the scow's insurers, cannot recover from the Upper Hudson Company, because that company was itself insured against the very loss and damage complained of by (in effect) the libelants themselves.

Whether one party insures another is primarily a question of fact, and, since contracts of insurance are commonly (as here) in writing, the content and purport of the writings must be first considered to ascertain even the intentions of the parties. The policy and rider in

evidence do not assist respondent's contention. The policy insures Bleakley "as interest may appear," and the rider is a part of the policy, not extending the nature of the assumed risk, nor on its face varying the parties in interest, but only widening the geographical limits within which the contract is to operate.

Doubtless a charterer has an insurable interest in the chartered vessel, and it is not legally impossible that such interest might for some purposes be covered by or in what is ordinarily the owner's policy. Hagan v. Scottish Union, etc., Co., 186 U. S. 423, 22 Sup. Ct. 862, 46 L. Ed. 1229. In this case, however, the Upper Hudson Company must affirmatively prove (having pleaded the defense as new matter) that it was itself the insured on the voyage to Long Beach, and do so by means other than the written contract. The only evidence produced is the fact that respondent procured and paid for the rider; i. e., a privilege to take the boat beyond harbor limits without vitiating what Bleakley had paid for. But this was in plain pursuance of the contract with Bleakley; he never agreed to let his boat go outside the harbor with his interest uninsured, and the reasonable inference from the testimony is that the charterer agreed to keep Bleakley insured if the boat was sent outside.

It results that there was no such agreement between owner and charterer as is alleged. Whether, therefore, had such agreement been made, it would have availed against the insurer, who certainly was no party to it, is a question that need not be considered.[1]

The finding of fault in the Ono renders it impossible to give her salvage, or any award in the nature thereof. All the services and expenses shown were rendered necessary by her negligence, and she was and is liable for that and more.

For these reasons, it is ordered that the decree in Bay Dredging, etc., Co. v. Upper Hudson Stone Co. et al. be affirmed, with one bill of costs, and the decree in White et al. v. Upper Hudson Stone Co. be reversed, and the case remanded, with directions to enter decree in favor of libelants against the Upper Hudson Stone Company and the motorboat Ono, execution to issue against the latter in the first instance, and said Stone Company to respond for any balance not collected by execution, said decree to carry costs in both courts. As to Gahagan, let the libel and petition be dismissed, with costs in both courts against the impleading respondent.

[1] The Sydney (C. C.) 27 Fed. 119 (appeal dismissed 139 U. S. 332, 11 Sup. Ct. 620, 35 L. Ed. 177), is in its facts nearer this case than any other reported litigation. As to the question suggested, but not discussed, see Boston Fruit Co. v. British, etc., Co., 11 Commercial Cases, 169. It may be noted that, to protect the bailee, the insurance would have had to cover, not only his interest in the vessel, but his negligence in caring for her—something as to which there is no proof at all.