### HEALEY v. MORAN TOWING & TRANSPORTATION CO.

### Appeal of CRANFORD CO.

(Circuit Court of Appeals, Second Circuit.    May 24, 1918.)

#### No. 228.

1. SHIPPING ⊙⟶52—INJURY TO SCOWS—LIABILITY OF CHARTERER.

A subcharterer of two dumper scows, to be used in moving excavated material, under a contract requiring it to furnish sufficient depth of water at all times at the loading place, and to be responsible for injuries caused by negligence of its employés, *held* primarily liable for injury to the boats by grounding and by heavy boulders dropped into them without the customary precautions.

---

⊙⟶For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes.

2. WORDS AND PHRASES—"DUMPING BOARD."

A "dumping board" consists of an elevated structure of timber, which in part overhangs the water, to enable a scow to go under it for the purpose of taking on a load.

3. WORDS AND PHRASES—"TIPPLE."

That portion of a dumping board, which is hinged so that it may be tipped up after material is deposited on it from an inclined plane or slide over, and from which the material is deposited by gravity in the scow, constitutes a "tipple."

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Tipple.]

Appeal from the District Court of the United States for the Eastern District of New York.

Suit in admiralty by Harriett A. Healey against the Moran Towing & Transportation Company and the Cranford Company, impleaded. Decree for libelant, and the Cranford Company appeals. Affirmed. For opinion below, see The Olympia, 243 Fed. 236.

This cause comes here upon appeal from a final decree entered in the United States District Court for the Eastern District of New York on June 1, 1917. The libelant is the owner of the scow and dumper Olympia, a vessel without motive power, built and used for the carriage of cargoes through the waters of the harbor of New York and waters tributary thereto. The Moran Towing & Transportation Company is a corporation created and existing under the laws of the state of New York.

The libel states two causes of action. For a first cause of action the libel alleges that the Olympia was delivered under a charter to the respondent on September 3, 1914, at New York City, in a sound and seaworthy condition. That while the said scow was in the exclusive possession of the respondent under the charter, and was being used by it, she was injured on September 4, 1914, by an accident while taking on a cargo of material for respondent at the dock of the Cranford Company, in the borough of Brooklyn, New York City, and was returned to libelant in such injured condition to the damage of the libelant in the sum of $94. It is then alleged that after being repaired by libelant she went again into the possession of respondent under the charter, and while in respondent's exclusive possession and while being used by respondent, was again injured and damaged by an accident while taking on another cargo of material for respondent at the Cranford Company's dock aforesaid, in the borough of Brooklyn, and was again returned to respondent in such injured condition to the damage of libelant in the amount of $433.50. It is then alleged that after the Olympia was again repaired she went once more into the possession of the respondent under the charter, and while in the exclusive possession of the respondent on September 22, 1914, she was again damaged by an accident while taking on another cargo of material for respondent at the Cranford dock in the borough of Brooklyn, and was again returned to the libelant in an injured condition to the libelant's damage in the sum of $104. It is alleged that the aforesaid damages were not due to the fault or negligence of the libelant, but were solely caused by respondent. And damages are asked in the sum of $631.50.

For a second cause of action the libel alleges that the libelant was the owner of the scow or dumper Atlanta, a vessel without motive power, and used for the carriage of cargoes through the waters of the harbor of New York and its tributaries and that on July 29, 1914, the scow was delivered by libelant to respondent under a charter and in a sound and seaworthy condition, and that the scow while in respondent's exclusive possession and being used by it, was injured while taking on a cargo of material at the Cranford dock in the borough of Brooklyn. It is then alleged that while in this injured condition the vessel was returned to libelant and was repaired, the amount of the damages amounting to the sum of $111.11. It is then alleged

that the damages aforesaid were not due to the fault or negligence of libelant, but were solely caused by the respondent. A decree under these two causes of action was asked in the sum of $742.61.

The respondent filed its answer in which is stated that it had chartered the scow Olympia and the scow Atlanta to the Cranford Company, and that if either scow sustained any damage it was while they were in the service of the Cranford Company, and not through any fault of the respondent, its agents or employés, but through the omission and carelessness of the master in charge of the respective scows, the employé of the libelant, or through the carelessness of the Cranford Company and its employés. The Cranford Company was brought in by petition of respondent under the fifty-ninth rule in admiralty (29 Sup. Ct. xlvi). The District Judge found the Cranford Company primarily liable. The damages were fixed by consent at $693.50, which, with the interest and costs, made a total of $868.50, and a decree was entered for that amount against the Cranford Company, and in case libelant should be unable to collect that sum from it then that libelant should have execution against the respondent. On this appeal the amount of the damages is not disputed, but the Cranford Company disputes liability.

Grout & McKinney, of New York City (Edward M. Grout and James F. McKinney, both of New York City, of counsel), for appellant.

Alexander & Ash, of New York City (Mark Ash and Edward Ash, both of New York City, of counsel), for appellee Healey.

Macklin, Brown & Purdy, of New York City (William F. Purdy, of New York City, of counsel), for appellee Moran Towing & Transportation Co.

Before WARD and ROGERS, Circuit Judges, and LEARNED HAND, District Judge.

ROGERS, Circuit Judge (after stating the facts as above). It appears that the Cranford Company had a contract for the construction of a certain portion of a Rapid Transit subway in the borough of Brooklyn. It also appears that the Cranford Company then entered into a contract with the Moran Towing & Transportation Company, which contract is in writing and under seal, for the delivery of its excavated material at its Gowanus Canal dumping board to scows or dumpers of the latter. The agreement recites the subway contract and stipulates that in the subway work "it will be necessary to dispose of excavated material which will be composed of earth, sand, gravel and boulders." It declares that "the expression 'material' used in the contract shall be construed to include earth, sand, gravel, and such boulders as will not exceed what is commonly known as two-man stone size, and other unobjectionable material which may be taken in by the Cranford Company." It states that the Cranford Company has arranged "to transport its excavated material to its dock on the Gowanus Canal * * * so that the earth may be dumped from the dumping board there installed into scows." It also states that the Moran Company proposes to supply dumpers and scows "to receive such material at said dock" and "dispose of said earth, sand, gravel, and boulders." And it further states that the Cranford Company agrees to provide a floating depth of water at all stages of the tide, to keep the entrance to the dumping board free from obstructions, "use due care in boarding all boats, and be responsible for all damages

caused by the carelessness or negligence of its employés." It agrees that the Cranford Company will provide berth at its docks for the loading of above-mentioned boats, where there will be sufficient water to float scows and dumpers at all stages of the tide. And the Cranford Company agreed "to have the entrance to dumping board free from obstruction, either floating or otherwise, so that ingress and egress may be readily had at all times."

The above are the pertinent provisions of the agreement between the Moran Company and the Cranford Company. And for the performance of this contract the Moran Company chartered from libelant the two dumpers, the Olympia and the Atlanta, and they were sent to the dumping boards to be loaded. While so engaged in September, 1914, the Olympia was damaged on two occasions by reason of heavy stones being dropped into the pockets by the Cranford Company while loading the dumper, and on one occasion by reason of her grounding at the dock of the Cranford Company while she was being loaded. The Atlanta was also damaged by the negligent dropping by the Cranford Company of a heavy stone in one of her pockets. The damages complained of consisted in the breaking of planks in the bottoms of the pockets by the dropping of the heavy stones, together with certain damage to the bottom of the Olympia by her grounding.

The libelant contends that the heavy stones which caused the injuries in the bottom of the pockets were much larger than two-man stones, and that the dropping of them into the dumpers without the usual precautions being taken of first dumping a quantity of dirt in the dumpers to break the force of the dropping, as is alleged to be the custom when heavy stones are dropped into a dumper, was negligence. And the injury to the Olympia by her grounding is claimed to be a violation of the express provision of the contract already quoted which made it the duty of the Cranford Company to provide a berth where there would be sufficient depth of water "at all stages of the tide."

[1-3] A dumping board, to which reference has been made, consists of an elevated structure of timber, which in part overhangs the water to enable a scow to go under it. A portion of the board (called a tipple) is hinged so that it may be tipped up after material is deposited on it from an inclined plane or slide over, and from which the material is deposited by gravity in the scow. Such a board has to be constructed a sufficient distance above the water that at high tide any style of scow may come under and take on a load. The customary height of the board at high tide is 12 to 14 feet, and at lower water the fall from the board to the bottom of the gates of a dumper is approximately 19 feet. The chief engineer of the Cranford Company testified at the trial that a 100-pound stone (one within the two-man limit of size) falling a distance of 16 feet would strike with an impact velocity of 3,200 foot pounds, which means that the force is sufficient to raise 3,200 pounds one foot. He testified that a stone so falling might break a plank, but whether it would or not would depend upon the thickness of the plank, the kind of wood in the plank, the shape

of the stone, and various other matters. This testimony was quite indefinite, and of no value by itself in helping to a solution of the case.

The contract provided for boulders which were not to exceed "two-man stone size." If boulders were dumped which exceeded that size, and damage resulted, the Cranford Company was clearly responsible; and, if stones which did not exceed the "two-man stone size" were dropped, it was the duty of the Cranford Company to use reasonable care that injury might not result therefrom. There is testimony in the record, apparently from a disinterested witness, a foreman carpenter in a shipyard who signed the survey on the Olympia, that he saw in the Olympia at the time of her first injury a stone of about three feet in diameter which two men could not lift, but which five or six men might "if they could get a good grip on it"; and the captain of the Olympia testified that the stone weighed 600 or 700 pounds. He testified respecting the second injury the Olympia received that the stone weighed about 400 or 500 pounds; and the captain of the Atlanta testified that the stone which was dropped into her pockets was very large and weighed about a ton. We know of no reason for discrediting the testimony of these witnesses.

But if we assume that they were mistaken it would not relieve the Cranford Company from liability. The president of the Moran Company testified that the custom in New York was when stones were to be dumped to "take the cars that we are sure the boulder dirt is in, and make a cushion for any stones that we have to dump." They dumped a load of soft dirt into the pocket to form a blanket which would absorb the shock of the falling stones. The evidence on this point is very clear so far as the injury to the Atlanta is concerned. The captain of that scow was asked whether, when the stone came down there was anything in the pocket of the scow, any dirt; and he replied that there was nothing in it. Stones large enough to break the planks in the dumpers should not have been dropped without taking the usual precaution of first dumping a covering of soft dirt into the pocket. It is true that it does not affirmatively appear whether the precaution was taken in the case of the Olympia; but, as the injuries resulted from dropping large stones into her pockets, it may not be unfair to presume that the parties in charge carried on their work on both boats in the same way.

The fact that, after the Olympia was injured the first time by the negligent loading of the Cranford Company and repaired, the dumpers were returned to the latter, is said to constitute an insurmountable estoppel as against the Moran Company, and it is claimed that "it assumed the risk and cannot shift it." If that be true, then, if a person traveling on a railway train is injured by the negligence of its employés, and after he recovers therefrom again travels on the same railway, he assumes the risk of any injury arising from the like negligence. Surely such an argument would not be seriously advanced by any one, and certainly not by the distinguished counsel who made it.

In the argument in this court counsel for the Cranford Company contended that that company in any event is not liable for an item of $433.50 for the expense of the survey of September 14, 1914, made

after the second injury to the Olympia covering the damage and the demurrage incident thereto. It is enough to say that under the assignment of error no mention is made of the matter now objected to. And no objection was raised at the trial in the court below. In the opinion of the District Judge he says:

"No fault was alleged in the method of making the repair, and it is necessary to assume, therefore, that the removal of these planks and their restoration was a proper item in repairing the damage caused by leakage."

It seems that when the dry dock people got possession of the boat they removed three planks from her bottom to get the water out of her. These planks the Cranford Company claims were perfectly good, and they say that the vessel was then found to be so out of repair from causes not the fault of the Cranford Company that 12 planks were put in her and other general repairs were made, for which the Cranford Company cannot properly be charged. But for the reason stated we are not at liberty to consider the point. This court is compelled to hold that the evidence shows that the injury to the Atlanta and the injuries to the Olympia were caused by the negligence of the employés of the Cranford Company in dumping the boulders into these scows without due care, as well as in permitting boulders larger than the contract permitted to be dumped at all. For the damages so caused the Cranford Company must respond in damages.

As to the injury occasioned to the bottom of the Olympia by grounding the case is equally clear. The contract expressly made it the duty of the Cranford Company to berth the boat at a dock having a sufficient depth of water to float her at all stages of the tide. The captain of the Olympia testifies that while she was being loaded he noticed she was lying with the bottom touching the bed of the water and that two or three times he told those engaged in loading the boat to stop because she was touching bottom and they continued loading, and then they sent for a tug to pull the scow out and that the scow could not "budge at all." There is no doubt that, when these boats were chartered to the Moran Company, they were in a seaworthy condition, and that that company was bound under its contract to return them in as good condition as it received them, reasonable wear and tear excepted. It did not do so, and is therefore liable. But as the damage to the boats was occasioned by the fault of the Cranford Company, which has been brought into the case under the fifty-ninth rule, the latter is primarily liable, with a right in the libelant to recover from the Moran Company, should she be unable to collect the amount of the decree from the Cranford Company.

Decree affirmed.