## DONOVAN v. FREDERICK STARR CONTRACTING CO. et al.

(District Court, E. D. New York. June 1, 1923.)

1. Shipping ☞54—Charterer's liability stated.

A charterer, although not insurer of chartered scow under its charter, was liable for its own negligence, or that of any person to whom it intrusted the boat.

2. Shipping ☞54—Charterer liable for unsafe berthing of scow.

Where scow was injured by being placed in unsafe berth for unloading by consignee, consignee and his agent were secondarily liable and the charterer primarily liable, for such injury.

3. Shipping ☞54—Consignee of scow under duty to furnish safe dock.

The consignee of scow and cargo *held* obligated to furnish a safe dock for the scow.

4. Wharves ☞20(1)—Occupant of dock liable for injuries from unsafe berth.

The occupant of a dock was liable for injuries to a scow, where by his invitation, express or implied, he allowed the scow to be placed in what he should have known, and was bound to know, was an unsafe berth.

In Admiralty. Suit by Timothy Donovan against the Frederick Starr Contracting Company, in which William H. Greene and J. F. Stapleton were impleaded. Decree against last-named defendants as primarily liable, and against first-named defendant as secondarily liable.

Foley & Martin, of New York City, for libelant.

Burlingham, Veeder, Masten & Fearey, of New York City, for respondent Frederick Starr Contracting Co.

Frederic H. Cowden, of New York City, for respondents Greene and Stapleton.

CAMPBELL, District Judge. This is a suit in admiralty to recover damages for injuries to the scow Francis D. The libel was filed by

Timothy Donovan, the owner of the scow Francis D., against Frederick Starr Contracting Company, and on petition of Frederick Starr Contracting Company, under the fifty-sixth rule in admiralty (267 Fed. xxi), William H. Greene and J. F. Stapleton were impleaded.

The said barge Francis D. was on the 28th day of December, 1920, chartered by the Frederick Starr Contracting Company under an oral charter. There was some contention on the trial as to whether the use of said scow was to be within the insurance limits of the harbor of New York, but I do not believe that a discussion of that question is material to this issue. The libelant furnished and paid the captain of the scow, one Henry Doran.

After receiving said scow, Frederick Starr Contracting Company consigned the same to William H. Greene, one of the respondents impleaded, with a load of cinders to be delivered alongside of a safe dock at Roslyn, L. I. William H. Greene, to whom said boat was consigned, was the lessee of a dock at Roslyn, L. I., known as the "town dock." Said boat was properly towed to Roslyn and placed along the face of the town dock, on January 3, 1921, and the captain of the scow was informed by the master of the tug that his lines should be left slack, so that the boat would lay off from the face of the dock at low water.

The boat remained at the face of the dock during the 3d, 4th, 5th, and 6th of January, and a smaller boat belonging to Starr Contracting Company lay along the south side of said dock and was being unloaded. On Friday, January 7th, the unloading of the Starr boat along the south side of the dock was completed and J. F. Stapleton, respondent impleaded, who was unloading and carting cinders for said respondent William H. Greene, had men at work on the dock. James Stapleton was the foreman for the respondent J. F. Stapleton, in charge of the men who worked at the town dock, and he on the morning of January 7th was anxious to take the Francis D. in along the south side of the town dock for the purpose of unloading her; it appearing that the front of said dock, from a very short space from the face thereof, was piled quite high with cargoes theretofore delivered.

The said James Stapleton spoke to Mr. Moore, the hoisting engineer at the dock adjoining the town dock, with reference to what he thought were the possibilities of taking the Francis D. in along the south side of the town dock; but Moore advised him that he could not do it successfully, because the tide was too low, and that there was not enough water to take the boat in along the south side of the town dock. Stapleton disagreed with Moore, and said he thought there was water enough for that purpose.

Later in the day on Friday the boat belonging to the Starr Contracting Company was moved out from the south side of the town dock, and men employed by Stapleton went on the Francis D. and placed lines on her for the purpose of taking her in on the south side. To accomplish this they changed her position, so as to bring her with her stern along the face of the town dock, the port side of the scow being about on a line which would be the continuation of the south side of the dock, her bow pointing off into the channel. They then pulled

her stern along the face of the town dock until the stern was pointed in along the south side of the dock, whereupon they attempted to draw her in, but, due to the water being too low, one side of her stern became stuck in the ground and they could not move her with the force then at hand, including the use of a motor truck on the dock hauling on a line which was made fast to the stern of the scow.

The captain of the Francis D. was on board during all of this time, but I believe his story, which is supported by the testimony of his son, that he did not take part in moving the boat and did not handle the lines. I further believe his story that he protested against the attempt to take the boat in on the south side of the dock. I can find no reason why he should be anxious to move the boat from the face of the dock, nor does there seem to be any reasonable motive for any such action on his part, because he would not be benefited financially or otherwise by any such movement. On the contrary, it was a benefit to the respondent Greene, impleaded herein, that the boat be unloaded and the charges for demurrage stopped, which could not be done while she remained on the face of the dock, and this was a sufficient motive to move Stapleton, who was working for Greene, whether he was an independent contractor or otherwise.

The captain of the scow endeavored to pull her off when the tide turned, but was unsuccessful. On Saturday, Stapleton's men again attempted and succeeded in pulling in the scow along the south side of the town dock, using a motor truck to furnish the power to drag in the scow. When the scow was drawn in along the south side of the town dock, a part of her rested on the ground, and the outer or bow portion was in the water.

The ground under water along the south side of the town dock was uneven, and there was a ridge that had been left by the boat that had been moved out before the scow was drawn in. When the boat was drawn in, the captain of the scow complained to the men in charge of the work that he did not feel it was a safe place to lie over Sunday, but they paid no attention to his protest and went away. The captain tried to pull the boat off, but could not, and between 4 and 5 o'clock on Saturday, on going below, found that the injuries complained of had occurred. He then called up the owner and the respondent J. F. Stapleton. Some time between 6 and 6:30 o'clock, the respondent Stapleton came down and looked over the boat and left a man to pump her out.

During the time one end of the boat was hung up, and before she was drawn into her final berth along the south side of the town dock the respondents Greene and Stapleton both saw the boat and knew of her condition. I find that the berth along the face of the town dock was a safe berth, because, although the ground under water in front of the dock sloped toward the channel, still the scow could safely rest on the ground, as it was even. I find that the berth along the south side of the town dock was not a safe berth for a scow of the size of the Francis D., laden as she was with cinders.

[1] The respondent Frederick Starr Contracting Company under its charter was not an insurer of the Francis D., but was liable for its

own negligence or that of any person to whom it intrusted the boat. Gannon v. Consolidated Ice Co., 91 Fed. 539, 33 C. C. A. 662; White v. Upper Hudson Stone Co., 248 Fed. 893, 160 C. C. A. 651; Schoonmaker-Conners Co. v. Lambert Transp. Co. (C. C. A.) 268 Fed. 102. The respondent Greene was bound, as the consignee of the Francis D. and as the lessee of the town dock, to furnish her with a safe berth.

The respondent Stapleton, his agents or servants, as the agents or servants of the respondent Greene, had no right to move the Francis D. to an unsafe berth along the south side of the town dock. They knew or should have known that said berth was unsafe, because from the evidence it appears that it had always been the custom to partly unload any boat before taking it in along the south side of the dock. Further, when in the first attempt on Friday to take the Francis D. in along the south side of the dock, she was hung up on one side of the stern, they were called upon to investigate and ascertain whether a safe berth for her could be found along the south side of the dock. They not only failed to do what they should have done to ascertain these facts, but in the face of the advice of the engineer, Moore, and the protest of the captain of the scow, the respondent Stapleton, by his agents or servants, took the Francis D. into an unsafe berth, and the injuries which she suffered were occasioned thereby.

[2, 3] I therefore find that the captain of the scow Francis D. did not, by his acts, in any way contribute to the accident; that the respondent impleaded, William H. Greene, and his agents or servants, and the respondent J. F. Stapleton, and his agents or servants, by their negligence brought about the condition which caused the injuries to the scow Francis D.; that the respondent William H. Greene, under his contract with the Frederick Starr Contracting Company, had bound himself to furnish a safe dock at Roslyn, L. I., for the delivery of the cinders, and even although he had not made a contract containing that express provision, as consignee he was under a like duty. Carroll v. Holway (D. C.) 158 Fed. 328.

[4] In addition to that, as the occupant of the dock, he was liable because by his invitation, express or implied, he allowed the Francis D. to be placed in what he should have known and was bound to know was an unsafe berth. Ulrichs v. Phœnix Horse-Shoe Co. (D. C.) 35 Fed. 308; The Calvin P. Harris (D. C.) 33 Fed. 295. The Frederick Starr Contracting Company, as charterer, is secondarily liable for the action of its consignee Greene, and his agents or servants, in placing the said Francis D. in an unsafe berth.

A decree may be entered against the respondents impleaded, William H. Greene and J. F. Stapleton, as primarily liable, and against Frederick Starr Contracting Company, respondent, as secondarily liable, with costs. The usual order of reference will be granted.