Michael K. Neville, Appellant, *v.* Morrison Coal and Coke Company and Another, Respondents.

First Department, January 9, 1925.

Ships and shipping — action by barge owner to recover for damage to barge — barge, without motive power, was chartered to one defendant — loaded barge was consigned to other defendant who towed it to dock — at low tide barge rested on rocks and was damaged — plaintiff made out prima facie case against both defendants — error to dismiss complaint at close of plaintiff's case.

In an action by a barge owner to recover damages for injuries to a barge without motive power, which he chartered to one of the defendants who, after it was loaded, consigned it to the other defendant who towed it to a dock, a *prima facie* case was made out against both defendants for the damage which was caused by the barge resting on rocks at the dock at low tide, and it was error to dismiss the complaint at the close of plaintiff's case.

When the plaintiff proved the damage to the barge and that it was moored by the defendants in an unsafe place, a *prima facie* case of negligence was made

out against both defendants and it then became incumbent upon them to prove that the injury happened notwithstanding the exercise of reasonable care on their part.

DOWLING, J., dissents, with opinion.

APPEAL by the plaintiff, Michael K. Neville, from a judgment of the Supreme Court in favor of the defendants, entered in the office of the clerk of the county of New York on the 7th day of January, 1924, upon the dismissal of the complaint at the close of plaintiff's case.

*Macklin, Brown & Van Wyck* [*William Van Wyck* of counsel], for the appellant.

*Hunt, Hill & Betts* [*Morris Douw Ferris* of counsel; *Joseph Addison* with him on the brief], for the respondent Morrison Coal and Coke Company.

*William L. Bowman,* for the respondent Rushmore Paper Mills, Inc.

MARTIN, J.:

On or about the 29th day of March, 1920, the coal carrying barge *Arnona,* in good condition and seaworthy, was chartered by the plaintiff to defendant Morrison Coal and Coke Company by an oral charter. It was without motive power. The captain had been placed in charge by plaintiff before the barge was chartered. It was hired to carry a cargo of coal. The coal company intended to turn it over to Rushmore Paper Mills, Inc., but plaintiff was not aware of this nor did he know to what place it was to be taken. The cargo of coal was placed on board and the barge was consigned to defendant Rushmore Paper Mills, Inc., at Calvary Cemetery dock, Newtown creek. It was towed there by a company employed by the consignee. After it had been placed in the berth by the tug, the master tied the barge to the dock. When the tide went out, it rested, with the cargo aboard, on rocks which penetrated the hull, causing it to sink and resulting in extensive damage. The master was not under the control of the plaintiff after the chartering nor was the plaintiff aware that the vessel would be moored in an unsafe berth. Rocks were found in front of the dock at a depth of six feet, at low water.

No officer, employee or representative of either defendant was called as a witness and nothing was shown as to the knowledge or lack of knowledge of the defendants or their employees in relation to the condition of the berth. The superintendent of Calvary Cemetery testified that the cemetery corporation had used the dock to unload brick and cement from barges for about twenty years prior to 1920. He never heard of any dangerous condition there or of any accident except to a loaded boat which listed. He

never heard of there being rocks which might cause injury to a vessel resting on the bottom, alongside of the dock. Since 1920 schooners loaded with lumber had tied up there, as well as brick-carrying and deck scows. For several years before the accident to this barge, the Rushmore Paper Mills, Inc., unloaded barges of coal at the dock. The witness did not know whether the cement boats were smaller than the coal barges. He had not paid much attention to these boats because his duties did not give him much time to go down to the dock.

The bridge tender employed by the city at the Meeker avenue bridge about 200 feet from the dock was called, by permission of the court during the plaintiff's case, as a witness for defendants. For seven years he had observed the dock from the bridge. According to him boats of various kinds went there; but the only accident he saw was to this one boat. He testified that he had seen four-masted schooners tied up where the *Arnona* was tied up. He also saw boats there loaded with brick and cement, but he did not know the draft of any of the boats.

By arrangement with the cemetery corporation, the defendant Rushmore Paper Mills, Inc., had been given the privilege for several years of using the dock at a charge of five dollars a day when the cemetery company was not using it. In the periods between such use by the cemetery corporation, at occasional times, the defendant Rushmore Paper Mills, Inc., seems to have virtually had possession of the dock.

At the close of plaintiff's case the motion to dismiss the complaint made by the defendants was granted.

The complaint having been dismissed at the end of plaintiff's case he is entitled to the most favorable inference deducible from the evidence. (*Stubbs* v. *City of Rochester,* 226 N. Y. 516, 527; *McNally* v. *Phœnix Insurance Co.,* 137 id. 389, 395; *Higgins* v. *Eagleton,* 155 id. 466, 471.)

When plaintiff proved the damage to his boat and that it was moored by the defendants in an unsafe place, a *prima facie* case of negligence was made out against both defendants. It then became incumbent upon them to come forward with proof to show that the accident happened notwithstanding the exercise of reasonable care on their part.

The plaintiff contends that the defendant Morrison Coal and Coke Company is responsible as bailee and that defendant Rushmore Paper Mills, Inc., is liable as tower, consignee and wharfinger. The defendant Morrison Coal and Coke Company, being the charterer, is liable as bailee for its own negligence and for negligence of the other defendant to whom it intrusted the control and custody of

the boat. (*Graves* v. *Davis*, 235 N. Y. 315, 320; *Gannon* v. *Consolidated Ice Co.*, 91 Fed. 539; *White* v. *Schoonmaker-Conners Co.*, 265 id. 465.)

In *The John Carroll* (275 Fed. 302) the Circuit Court of Appeals, Second Circuit, stated the law as follows: " The New York Central Railroad Company was the charterer of the scow, and it seems to be conceded that the boat was in a seaworthy condition when the railroad company took possession of it. It was bound to return the scow to the libelant in as good condition as she was in when it took possession — reasonable wear and tear excepted. It did not do so, and is, therefore, secondarily liable in accordance with our decision in *Healey* v. *Moran Towing & Transportation Co.*, 253 Fed. 334, 165 C. C. A. 116.

" It is a general rule of the law of bailments that where chattels are delivered to a bailee in good condition and are returned in a damaged state the law presumes negligence to be the cause, and casts upon the bailee the burden of showing that the loss is due to other causes consistent with due care on his part. 6 C. J. p. 1158. While the bailee may overcome this presumption by showing that the loss occurred through some cause consistent with due care on his part, that presumption, under the circumstances of this case, was not overcome. * * * "

The liability of the Rushmore Paper Mills, Inc., is predicated on its negligence, it having been the consignee of the cargo and having selected and been in possession of the dock, and having towed and berthed the vessel. It is liable for any damage caused by its own negligence. There was no contractual relationship between plaintiff and the consignee to give rise to a presumption such as arises in reference to the bailee. There was no contract of bailment, affreightment or of any other nature between the plaintiff and this defendant.

However, a consignee is required to use reasonable care in the selection of a berth.

In *M. & J. Tracy, Inc.*, v. *Marks, Lissberger & Son, Inc.* (283 Fed. 100, 102) the court said: " The consignee of a vessel is ' bound to provide a safe berth,' as has been often said (*e. g.*, *Bowen* v. *Decker* [D. C.] 18 Fed. 751), which phrase, however, means no more than that such consignee, while not guaranteeing the safety of the destinated wharf, ' is bound to exercise diligence in ascertaining the condition of the dock and of the berths, and to give notice of any obstruction or of any danger to vessels ' (*Look* v. *Portsmouth, etc., R.* [D. C.] 141 Fed. 182). This, also, is an obligation to exercise due care according to the circumstances, and as against a consignee it is as necessary to prove negligence as it is against

a wharfinger. There is no warranty or insurance in either instance. Yet a distinction has been suggested between the standard of duty required of a wharf owner and that of a consignee. *Conklin* v. *R. P. & J. H. Staats Co.*, 161 Fed. 897 (899), 88 C. C. A. 593." (See, also, *Carroll* v. *Holway*, 158 Fed. 328.)

In *LaBrecque Company, Inc.*, v. *Barton Lighterage Co., Inc.* (204 App. Div. 401), Mr. Justice McAvoy, writing for the court said (at p. 404): "We think, therefore, that it having appeared that defendant was given what amounted to an assurance of safety in the matter of landing the craft, it cannot be said that it was negligent in mooring as it did. But assuming that it were neglectful in its manner of mooring, the plaintiff contributed to the accident as matter of law, if it be found that defendant was impliedly or expressly invited to use the wharf with an assurance that it was safe to land."

Although there was no contractual relationship between the Rushmore Paper Mills, Inc., and the plaintiff, the burden was upon the defendant Rushmore Paper Mills, Inc., to show that it used reasonable care in selecting the berth in question.

The liability of the charterer is greater. By virtue of the contract giving it the right of possession and control it is required to show, in case the vessel be damaged by an occurrence which was not caused by act of God, fire or some other overwhelming power, that the vessel was damaged notwithstanding the exercise of due care by those in possession of it at the time. (*Terry & Tench Co.* v. *Merritt & Chapman Derrick & Wrecking Co.*, 168 Fed. 533; *Swenson* v. *Snare & Triest Co.*, 160 id. 459; *Pacific Mail S. S. Co.* v. *Panama R. Co.*, 251 id. 449; *Stewart* v. *Stone*, 127 N. Y. 500.) The degree of care to be exercised depends largely on the facts in each particular case.

In *Leary* v. *Woodruff* (4 Hun, 99) the court said: "The plaintiff says that, having been invited to the defendant's premises for the business in question, a duty devolved on the defendant to keep his premises and the approaches thereto which were under his control in suitable order for such business. This proposition is supported directly by the case of *Carleton* v. *Franconia Iron & Steel Co.* (99 Mass. 216). In that case a vessel sustained injuries from a rock in the bed of the dock under water, and the defendants were held liable. And the court says, even if defendants had no title to the dock, yet, if they occupied it and the adjoining wharf, and for their own benefit induced vessels to come to the wharf, their liability is not diminished. The like principle is held in *Sweeny* v. *Old Colony R. R.*, 10 Allen (Mass.) 372. A liability will not attach to the owner or occupant of the premises, if the defect

or obstacle be so hidden that its existence could not be discovered by a reasonable examination commensurate with the use to be made of the premises.   *   *   * "

In *Nickerson* v. *Tirrell* (127 Mass. 236, 239) MORTON, J., said: " The general rules of law applicable in cases of this character are well settled.   The owner or occupant of a dock is liable in damages to a person who, by his invitation express or implied, makes use of it, for an injury caused by any defect or unsafe condition of the dock which the occupant negligently causes or permits to exist, if such person was himself in the exercise of due care. Such occupant is not an insurer of the safety of his dock, but he is required to use reasonable care to keep his dock in such a state as to be reasonably safe for use by vessels which he invites to enter it, or for which he holds it out as fit and ready.   If he fails to use due care, if there is a defect which is known to him, or which by the use of ordinary care and diligence should be known to him, he is guilty of negligence and liable to the person who, using due care, is injured thereby.   *Wendell* v. *Baxter*, 12 Gray, 494.   *Carleton* v. *Franconia Iron & Steel Co.*, 99 Mass. 216.   *Thompson* v. *North Eastern Railway Co.*, 2 B. & S. 106.   *Mersey Docks* v. *Gibbs*, L. R. 1 H. L. 93.

" In the case at bar, there was conflicting evidence as to the state of the dock and as to the cause of the injury to the plaintiffs' vessel, and the presiding judge was required to submit the case to the jury.   He did so, with instructions which are in substantial accordance with the rules stated above.   *   *   * "

In *Smith* v. *Burnett* (173 U. S. 430, 433) the court said: " Although a wharfinger does not guarantee the safety of vessels coming to his wharves, he is bound to exercise reasonable diligence in ascertaining the condition of the berths thereat, and if there is any dangerous obstruction to remove it, or to give due notice of its existence to vessels about to use the berths.   At the same time the master is bound to use ordinary care, and cannot carelessly run into danger.   *Philadelphia, Wilmington, etc. Railroad* v. *Philadelphia, etc. Steam Towboat Co.*, 23 How. [U. S.] 209; *Sawyer* v. *Oakman*, 7 Blatchford, 290; *Thompson* v. *N. E. R. R. Company*, 2 B. & S. 106; S. C. Exch. Ch., id. 119; *Mersey Docks Trustees* v. *Gibbs*, L. R. 1 H. L. 93; *Carleton* v. *Franconia Iron & Steel Company*, 99 Mass. 216; *Nickerson* v. *Tirrell*, 127 Mass. 236; *Barber* v. *Abendroth*, 102 N. Y. 406.   *   *   *

" In *The Moorcock*, 13 P. D. 157, defendants, who were wharfingers, agreed with plaintiff for a consideration to allow him to discharge his vessel at their jetty which extended into the river Thames, where the vessel would necessarily ground at the ebb

of the tide. The vessel sustained injury from the uneven condition of the bed of the river adjoining the jetty. Defendants had no control over the bed, and had taken no steps to ascertain whether it was or was not a safe place for the vessel to lie upon. It was held that, though there was no warranty, and no express representation, there was an implied undertaking by defendants that they had taken reasonable care to ascertain that the bottom of the river at the jetty was not in a condition to cause danger to a vessel, and that they were liable. The judgment was sustained in the Court of Appeal, 14 P. D. 64, and was approved by the House of Lords in *The Calliope*, (1891) App. Cas. 11, though in the latter case it was ruled, on the facts, that there was no sufficient evidence of any breach of duty on the part of the wharfingers, and that the injury to the vessel was caused by the captain and pilot attempting to berth her at a time of the tide when it was not safe. * * * The Lord Chancellor remarked: ' In this case the wharfinger, who happens to be the consignee, invites the vessel to a particular place to unload. If, as it is said, to his knowledge the place for unloading was improper and likely to injure the vessel, he certainly ought to have adopted one of these alternatives: either he ought not to have invited the vessel or he ought to have informed the vessel what the condition of things was when she was invited, so that the injury might have been avoided.' "

In *Donovan* v. *Starr Contracting Co.* (290 Fed. 501, 503) the court said: " The respondent Frederick Starr Contracting Company under its charter was not an insurer of the *Francis D.*, but was liable for its own negligence or that of any person to whom it intrusted the boat. *Gannon* v. *Consolidated Ice Co.*, 91 Fed. 539; * * * *White* v. *Upper Hudson Stone Co.*, 248 Fed. 893; * * * *Schoonmaker Conners Co.* v. *Lambert Transp. Co.*, 268 Fed. 102. The respondent Greene was bound, as the consignee of the *Francis D.* and as the lessee of the town dock, to furnish her with a safe berth.

" The respondent Stapleton, his agents or servants, as the agents or servants of the respondent Greene, had no right to move the *Francis D.* to an unsafe berth along the south side of the town dock. * * *

" In addition to that, as the occupant of the dock, he was liable because by his invitation, express or implied, he allowed the *Francis D.* to be placed in what he should have known and was bound to know was an unsafe berth. *Ulrichs* v. *Phœnix Horse-Shoe Co.* (D. C.) 35 Fed. 308; *The Calvin P. Harris*, 33 Fed. 295. The Frederick Starr Contracting Company, as charterer, is secondarily

liable for the action of its consignee Greene, and his agents or servants, in placing the said *Francis D.* in an unsafe berth."

In the case of *Vroman* v. *Rogers* (132 N. Y. 167, 170, 171) the court said: " The plaintiffs having and assuming to maintain the dock and slip to supply wharfage of vessels for hire, was bound to keep them in suitable condition for the purpose, and for any injury or loss resulting to persons properly using them occasioned by his failure to perform his duty in that respect, he was chargeable with negligence and liability. (*Leary* v. *Woodruff*, 4 Hun, 99; 76 N. Y. 617; *Barber* v. *Abendroth*, 102 id. 406; *Carleton* v. *Franconia Iron & Steel Co.*, 99 Mass. 216.)   This duty of a wharfinger requires of him diligence to give safety to the use of the wharf and its harbor by his patrons, while upon them is imposed ordinary care.   And assuming that assurance was given by the defendant to the plaintiffs that the place where the barge was moored was in suitable condition and all right, they were at liberty to assume it to be so, and were justified, without imputation of negligence on their part, to put their vessel there without personal examination, beyond what was obvious to ascertain whether or not it was suitable for their use, provided they correctly represented to the defendant the character of their vessel and the depth of water requisite for it.   And if they suffered loss by reason of a defective condition of the wharf or slip before they had opportunity, or reason to observe or apprehend it, and which condition the defendant knew existed, or by proper diligence may have ascertained, he was chargeable with the consequences."

We are of the opinion that the defendants were not entitled to a dismissal of the complaint at the end of plaintiff's case.   It is true that the proof does not show in detail how the injury occurred. But the bailee must exercise due care under all circumstances.   In the absence of such proof there is a presumption of negligence on the part of the bailee.   (*Stewart* v. *Stone, supra; Terry & Tench Co.* v. *Merritt & Chapman Derrick & Wrecking Co., supra.*)

The evidence made out a *prima facie* case of negligence chargeable to both defendants.

The judgment appealed from should be reversed and a new trial ordered, with costs to appellant to abide the event.

CLARKE, P. J., MERRELL and BURR, JJ., concur; DOWLING, J., dissents.

DOWLING, J. (dissenting):

The complaint herein is based upon the theories both of contract and tort.   On the theory of tort, the record is barren of any proof

19

whatever of any act or omission upon the part of the defendants, or either of them, constituting negligence. On the theory of a breach of contract, plaintiff has failed utterly to prove what the terms of the alleged agreement of charter were. The testimony is no more than that the agent of the Morrison Coal and Coke Company said: " I want to charter that boat for another trip," and plaintiff said: " All right, you can have it," and the rate to be paid per ton and the demurrage were agreed on. Disregarding the conflicting inference raised by the bill of lading that this was a mere contract of affreightment, and treating it as one of charter, the duty was upon plaintiff to show that defendants had agreed to return the vessel in good order and condition, or in default thereof to prove negligence on their part. As was said by Judge ROGERS of the Circuit Court of Appeals, Second Circuit, in *Schoonmaker-Conners Company, Inc.*, v. *Lambert Transportation Company* (268 Fed. 102, 104): " It is settled law that, where a charter party contains no covenant for the return of a vessel in good order and condition, there is no liability for injury to the vessel without proof of negligence (*C. F. Harms Co.* v. *Upper Hudson Stone Co.*, 234 Fed. 859). The liability of a charterer depends upon the terms of the charter party, and if the injuries complained of are not within the terms of the charter party then liability will turn upon whether the damages are attributable to the charterer's negligence (*Worrall* v. *Davis Coal & Coke Co.*, 122 Fed. 436.) "

And in *The Raymond M. White* (290 Fed. 454) Judge CAMPBELL of the United States District Court for the Eastern District of New York said (at p. 456): " The Courts have differed in their construction of charter parties with reference to the words ' in the same condition as it is in now, less ordinary wear and tear,' when used therein; but I believe that the weight of authority holds that in no case should a bailee for hire be made an insurer by implication, but only by clear and explicit language, and that by the use of the words quoted this respondent became liable only for its own negligence." (Citing cases.)

As I regard the present record as totally devoid of the required proof of negligence by defendants, I, therefore, dissent from the reversal of the judgment and vote to affirm the same.

Judgment reversed and new trial ordered, with costs to appellant to abide the event.