**O'DONNELL TRANSP. CO., Inc., v. M. & J. TRACY, Inc.**

**THE RENO.**

**THE ROSE REICHERT.**

No. 354.

Circuit Court of Appeals, Second Circuit.
July 10, 1945.

---

Mahar & Mason, of New York City (Frank C. Mason, of New York City, of counsel), for appellant Reichert Towing Line, Inc., claimant of the Rose Reichert.

Purdy & Lamb, of New York City (Edmund F. Lamb, of New York City, of counsel), for O'Donnell Transp. Co., Inc., libellant-appellee.

Macklin, Brown, Lenahan & Speer, of New York City (Leo F. Hanan, of New York City, of counsel), for M. & J. Tracy, Inc., respondent-appellee.

Dow & Symmers, of New York City (Joseph M. Brush, of New York City, of counsel), for Public Fuel Service, Inc., respondent-appellee.

Before L. HAND, AUGUSTUS N. HAND, and FRANK, Circuit Judges.

AUGUSTUS N. HAND, Circuit Judge.

The libellant, the charterer and operator of the barge Reno, entered into an oral subcharter with M. & J. Tracy, Inc., in the usual harbor charter form, whereby Tracy agreed to receive the Reno on charter at a daily rate of hire until Tracy should return her light within the limits of the New York Harbor in as good condition as when received, ordinary wear and tear excepted. When the barge was delivered to Tracy by the libellant about December 21, 1942, she was tight, strong and in all respects seaworthy, but when finally returned to libellant was damaged as a result of alleged lack of care on the part of Tracy. The latter impleaded Public Fuel Service, Inc., and the tug Rose Reichert, and offered evidence showing that the tug had caused the Reno to be delivered at the dock of Public Fuel Service, Inc. at 144th Street; that Public Fuel Service, Inc., had caused the Reno to be moved by the tug from 144th Street to a dock at 147th Street and the Harlem River, and that in moving her the tug had negligently caused ice to be forced through one of her planks so that she filled with water and sank. The Rose Reichert was hired to do the towing by Public Fuel Service, Inc. The latter as consignee of the cargo of coal laden on the Reno paid Tracy so much a ton to deliver the coal at the dock at 144th Street.

The bargee of the Reno testified that the tug in attempting to move the Reno from the consignee's dock at 144th Street where she lay inside of two other barges and in order to tow her to 147th Street and the Harlem River jammed the port stern of the Reno against one of these barges known as The McLain and caused ice between The McLain and the stern of the Reno to be crushed against the latter. He said that he heard ice crushing against the side of the Reno as she "was being broken out from the 144th Street dock." He testified that he had sounded her at about 6:30 A.M. on the day of the accident and just before the tug started to pull her away from the 144th Street dock and that he had found only 5 inches of water in her, or just the same amount as a sounding taken the night before had indicated. When she arrived at 147th Street, he sounded her again at about 9 A.M., with the same result as at 6:30 A.M., and then left the vessel to go ashore for a time on his own business. On returning to her at about 1:30 in the afternoon he testified that he found her down at the stern and about 7 feet of water in her hold. He immediately started her pumps running and got a tugboat to put a siphon in her but was unable to prevent her from sinking about two hours later. When she was raised, a jagged hole was found below the deck at the extreme port side of the stern located in the ninth and tenth planks about 18 inches long and 8 inches wide. The libellant claims that ice which was crushed into the hull of the barge by the rough and negligent manoeuvring of the tug filled the hole and remained there until the tide changed and floated it out. This interpretation of the cause of the accident is one which the district court adopted and, in our opinion, rests on a more likely theory than the suggested alternative that floating ice in a tide no swifter than four miles per hour should have crushed into the barge as she was towed up to 147th Street, or lay at the 147th Street dock after being left there. It is warranted by the crushing sound of ice heard by the bargee when the tug pushed the McLain against the Reno and the rubbing of the McLain against the Reno would seem to have involved a much heavier impact than that from ice floating down the Harlem River in the tide. It may be argued that the ice which is believed to have punctured the hull and thus to have filled the hole so that water could not enter could not have remained there for many hours before the barge began to leak because it would have melted, but we have proof that the ice which was crushed against the barge was the most likely cause of the puncture of the hull. In these circumstances we think that the length of time

during which the ice was likely to remain in place without enabling water to enter was a question for the trier of the facts. No other reasonable explanation of the injury was indicated by the evidence than from the crushing of ice while the barge was being moved from the 144th Street dock; the hole made was below the water line where it was not visible prior to the time the boat was raised and the sounding by the bargee at about 9 A.M. showed that no water was then entering. The best explanation is the one adopted by the District Judge and we cannot say that his conclusion was clearly erroneous.

Upon the case submitted the court held the tug Rose Reichert primarily liable for the damage to the barge Reno, and Tracy, the sub-charterer, secondarily liable. It exonerated Public Fuel Service, Inc., on the ground that the latter "had no control over the movements of any barge so used by * * * Tracy for * * * transportation, including the barge 'Reno'." From an interlocutory decree granted to the libellant against the tug Rose Reichert primarily and Tracy secondarily, the claimant of the tug appeals and Tracy files cross-assignments of error. We think the disposition of the suit by the court below was right and should be affirmed.

Upon the findings the tug Rose Reichert was primarily liable as an active tort feasor but it is argued that a secondary liability should not have been imposed upon Tracy.

Under the contract between the libellant and Tracy its subcharterer, the latter had the burden of going forward with evidence to explain the accident. If the judge's findings were wrong there was no reasonable explanation of the accident and the negligence of the sub-charterer Tracy would be presumed and its liability primary. The Harper No. 145, 2 Cir., 42 F.2d 161, 164; Tomkins Cove Stone Co. v. Bleakley Transportation Co., Inc., 3 Cir., 40 F.2d 249, 252. But we hold that the immediate cause of the damage to the barge was the negligent handling of the vessel by the Reichert Towing Line and that Tracy's liability is due to the fact that it entrusted the barge to Public Fuel Service Inc., which hired the offending tug and is accordingly secondarily liable. It has long been held that a charterer of a barge who hires a tug to tow it is liable for the negligence of the tug. It was so held in Smith v. Bouker, 2 Cir., 49 F. 954, by Judges Wallace and Lacombe; in Gannon v. Consolidated Ice Co., 2 Cir., 91 F. 539, by Wallace, Lacombe and Shipman, JJ.; in White v. Upper Hudson Stone Co., 2 Cir., 248 F. 893 (certiorari denied 246 U.S. 665, 38 S.Ct. 335, 62 L.Ed. 929), by Rogers, Hough and L. Hand, JJ., and in The E. T. Halloran, 2 Cir., 111 F.2d 571, by Swan, Chase and Patterson, JJ. As Judge Hough said in White v. Upper Hudson Stone Co., 2 Cir., 248 F. 893, 895: "The obligation was that of a bailee, and liability was not discharged by showing that the vessel had been intrusted to the care of another, and injured either by that other's negligence or while in such other's charge."

As an original proposition it might have been said that the obligation of the bailee of a barge to the owner would be satisfied by the selection of a reputable tug to do the towing. But such has not been the development of the law affecting the obligations of charterers. In the present case it is argued that Tracy did not hire the tug or have any agreement with the Reichert Towing Line and that the latter was only the agent of Public Fuel Service Inc., the consignee. But in determining whether liability should be fixed on a charterer for the acts of a person to whom it entrusts a barge there seems to be no sufficient reason for drawing nice distinctions between towing lines, consignees, sub-charterers and wharfingers with which such barges may be left. Liability is imposed upon charterers upon the theory that they should at all times care for the barge while she is under charter to them and that they are under a duty which may not be delegated to others. While they do not warrant the safety of the barge they have an obligation to have it properly cared for by any person with whom they entrust it. We think that Public Fuel Service, Inc. was such a person and that Tracy is liable for the acts of negligence committed by it or the tug that it hired.

In The John Carroll, 2 Cir., 275 F. 302, where the New York Central had chartered a barge and left it with United Port Service Company, whose tug had placed it in an unsafe berth, we held the United Port Service Company primarily liable and the New York Central, as charterer, secondarily liable for damage to the barge occasioned by the unprotected nature of the berth. In Healey v. Moran Towing & Transportation Co., 2 Cir., 253 F. 334, the negli-

738

gence of a sub-charterer was imputed to a charterer who accordingly was held secondarily liable. In Neville v. Morrison Coal & Coke Co., 211 App.Div 282, 207 N.Y.S. 471, a charterer was held liable for the negligence of a consignee. See also as to liability of charterers in consignee cases: Acme Scow Corporation v. Phoenix Sand & Gravel Co., D.C., 271 F. 1014; Donovan v. Frederick Starr Contracting Co., D.C., 290 F. 501; The Henry McNamee, D.C., 35 F.Supp. 936; Tucker v. Edward A. Thompson Inc., (1941), A.M.C. 808; MacKenzie and McAllister v. United States (1942), A.M.C. 1215.

Both the owner of the Rose Reichert and Tracy claim that the sinking of the barge was due to the negligence of the bargee. This is contrary not only to the finding of the District Court but to any reasonable view of the evidence. When the bargee left his vessel at about 9 A.M. the hole through which the water finally entered was not visible because it was below the water line. Moreover, the barge had evidently not then begun to leak for if she had then been leaking she would apparently have sunk long before she did. As soon as the bargee was aware that she was filling he did everything possible to rescue her, though in vain.

The claimant of the tug has not assigned error in the provision of the decree which dismissed the libel as against Public Fuel Service, Inc., nor has Tracy filed cross-assignments of error as to such dismissal.

The interlocutory decree is affirmed.