Choate, D. J.
This is a libel to recover damages alleged to have been sustained by the libellant’s canal-boat F. W. Walker, on the fourteenth day of April, 1878, while in tow of the steam-tug Lavergne, through the carelessness of the tug. The tug undertook to tow the canal-boat, which was light, from Nyack to Hoboken. She had also to tow from Nyack to Irvington, four miles below Nyack, on the east side of the Hudson, a heavily-loaded barge. She took the canal-boat on her port side and the barge on her starboard side, and proceeded down the river. There was a brisk north-west wind, making a short, chopping sea in that part of the river which broadens into what is known as the Tappan Sea. The weather was pleasant, and there is no evidence of any change, in wind or sea up to the time of the accident. After getting into the middle of the river and proceeding down for about *789 two miles, the tug began to head towards the eastern bank, and when about opposite the dock at Irvington, and at a distance variously estimated by the witnesses from 300 to 900 feet from the dock, she began to round to in order to land the barge, the tide being then the first of the ebb.
The libel alleges that the “tug rounded to broadside to the sea and wind, bringing the libellant’s boat into the trough of the sea, where the tug and canal-boat lay for several minutes, the tug pounding against the broadside of libellant’s boat with such violence as to break in two a large timber or log, used in the construction of the canal-boat, at about the center of the boat, and doing other injury.” The negligence of the tug is specified as follows: “That the said damage was caused by the want of skill and care of those navigating the said steam-tug; among other things, in placing the said boat broadside to the wind and sea, and in the trough of the sea, and there permitting the said vessels to pound until the said damage was caused.”
The answer sets up no affirmative defence. It contains a general denial, except as to the taking of the canal-boat in tow from Nyack to Hoboken. The libellant’s boat was a timber-built boat, the sides being constructed of timbers 14 inches wide and 4 inches thick, securely bolted together by bolts running from top to bottom. I think it is proved that the boat was in good and seaworthy condition when taken in tow, and that while they were rounding to at Irvington one of these timbers on her starboard side, a little above her light waterline, was so pressed in by contact with the tug or her fenders that it was broken or cracked across the width of the timber, and that that timber and the one immediately below it were sprung out of place so as to cause her to leak. The libellant has had the injury partially repaired by pressing the timbers out, and by calking and patching, but the boat still leaks from this injury. I think, also, it is proved that this injury was caused by the jumping up and down of the canal-boat with the sea, and her thumping against the side of the tug while they were exposed to the sea in rounding to, and were broadside to the wind and sea. There is no other adequate cause *790 shown or suggested for the break in the timber, and the springing of the timbers proved, except this.
The testimony of the libellant and his wife, which tend to show a very violent rocking and thumping of the canal-boat while in this position, is confirmed to some extent by the testimony of the pilot of the tug, who admits that while his engine was stopped and he was heading about N. E. which would have brought him about broadside to the wind and sea, and in the trough of what sea there was, the libellant, from his boat hailing him, complained of his stopping there and said something about his boat jumping. I do not think it controls the evidence on the part of the libellant, that the witnesses from the tug and the barge did not observe or do not now recollect any saeh thumping as would account for so serious an injury to libellant’s boat. The tug and the barge were deep in the water, and had the canal-boat on the windward side of them. The tug and barge were much less liable to be affected by the motion of the water than the canal-boat, and those on them were much less likely to notice its effect on the canal-boat than those on her.
Great importance seems to have been attached in the trial and the argument to the question, how long the canal-boat was thus kept broadside to the sea and wind in rounding to. The libellant insists that they stopped there several minutes; that they were held in that position much longer than was really necessary to effect the landing of the barge; that by going down stream a little further before rounding to, and keeping the engine working constantly till they got headed up the river, they would have passed more quiekly through this dangerous point of the navigation, giving the canal-boat less •opportunity to pound against the tug; that by handling her in this way the slowing or stopping of the engine to deaden, ■the headway of the barge, which was necessary in order to bring her up to the pier without too violent contact, could have been avoided altogether, or, at any rate, might have been made after rounding to and while heading up the river, and not, as was done, while broadside to the wind and sea.
1 think, upon the evidence, that the stopping of the engine *791 could, by the maneuver suggested, have been avoided while they were thus lying in this most exposed position, and that, therefore, the time they lay broadside to the wind and sea could have been shortened; but it is by no means clear on the proofs that this mere lengthening of the time they were in that position was the cause of the injury. Though the engine stopped, while they were in this position, to deaden the headway of the loaded barge, the stoppage was very brief, .and they did not lose their headway entirely while the engine was thus stopped. The real question, however, I think, is whether the tug is chargeable with negligence in bringing the canal-boat into that position at all. If the position itself involved this danger of injury, it did so equally whether the position was maintained half a minute or two minutes. If the position did not itself-involve the danger, if continued for the shortest time necessary for rounding to, it hardly seems to me that there was any negligence in rounding to as the tug did, with the slight delay made on this occasion. That this was the proper and usual way of landing the barge on the ebb-tide is not disputed. But the question is whether, under existing circumstances of wind and sea, the tug ought to have exposed the canal-boat, being light, to the peril involved in thus being brought broadside to the wind and sea.
The libellant cannot complain that the tug took another boat in tow. The canal-boat did not engage the exclusive use of the tug. Nor can the libellant, because he was to be -towed to Hoboken, complain that the tug stopped at Irvington to leave the other boat. Parties who take their places in a tow with other boats do so on the understanding that those other boats are to be, or may be, left on the way. But while the right of the tug to land the barge at Irvington cannot be disputed, and the necessary delay and deviation from her own voyage, neeessary therefor, must be submitted to by the canal-boat, yet it cannot be claimed that in the performance of its duty to another boat, in bringing her to her intermediate landing, the tug can rightfully subject the canal-boat to .any extraordinary danger of navigation, or bring her into any .peril from which the tug cannot, by the use of means at its *792 command, protect her. Thus the tug had the right to land the barge at Irvington, but was bound to do so in a mode which should be safe for the canal-boat; at least to this extent, that she should not be brought thereby into any position of peril into which it was inconsistent with the exercise of ordinary eare on the part of the tug to bring her.
It is obvious that it was not absolutely necessary to keep the canal-boat along-side while landing the barge. She could have been anchored till the barge was landed, and perhaps she could have been safely cast off in the river before rounding to without being anchored The simple question, therefore, is whether it involved so much danger of injury to the canal-boat to bring her broadside to the wind and sea that the master of the tug failed to exercise ordinary care and the proper skill of a tug-boat pilot in doing so.
The evidence is somewhat conflicting as to the violence and strength of the wind, and as to how high the sea was. In that broad part of the river the wind has considerable effect in raising a sea, but I think the evidence of the injury actually done to the boat is entitled to very considerable weight upon this question. "While it cannot, of course, be held, as an absolute rule, that pilots should always foresee what does take place as the result of the action of the wind and sea on the boats in their charge, yet, in the absence of anything to show that what has happened was something extraordinary, and not to be anticipated as the result of the causes open to their observation, and with which they are bound to be familiar, they must ordinarily be held to have been able to anticipate those effects.
In this case there was no sudden squall, no increase in the force of the wind or sea, but a state of wind and sea which the pilot of the tug knew from the start, and which he was, or should have been, competent to measure the force of in its effect on the light boat by his side. And in this case, I think, it may properly be held that he should have foreseen, and, therefore, have guarded against, this particular danger. It is no answer to say that the libellant, the owner and master of the canal-boat, did not object to proceeding after he knew the *793 barge was to be landed at Irvington, or that he did not object to the tug’s rounding to, with his boat along-side. There may be cases where the danger about to be incurred is so very obvious that the master of the canal-boat may be chargeable with contributory negligence in voluntarily exposing his boat to the peril without objection, but this certainly is not such a case.
The captain of a canal-boat, though he may have had a long experience in being towed, is not, therefore, an expert in the handling of a tow by the tug. On such a question as this, whether the tug can safely, under the circumstances, round to with the sea that is running, he surrenders his judgment to that of the pilot of the tug, as his superior in technical knowledge, by putting his boat in the pilot’s charge. The pilot of the tug takes entire control of the canal-boat, and even if the master of the canal-boat entertains some doubt about the tug’s ability to execute the maneuver which it undertakes, he is to be presumed to have deferred to the superior judgment of the pilot of the tug, who takes the responsibility for the safe and proper towing of his boat.
On the whole evidence there must be a decree for the libellant, with costs, and a reference to compute the damages.