### TUCKER v. GALLAGHER et al.

(District Court, S. D. New York. May 28, 1903.)

1. TUG AND TOW—LOSS OF TOW—NEGLIGENCE OF TUG IN EXPOSING TOW TO DANGEROUS WEATHER.

  Evidence considered, and *held* to establish that the sinking of a sectional barge in tow, laden with coal, in the Delaware river, was due solely to the fault of the tug in starting out with the barge when the weather was threatening, and in persisting after it became such that it was dangerous for a tow of such character, and until the river became so rough that the sections of the barge became unhinged and separated, bringing about a situation which the tug was unable to cope with, partly because of defective lines.

In Admiralty. Action against the owners of a tug to recover for loss of tow.

James J. Macklin, for libelant.
Owen & Sturges, for respondents.

ADAMS, District Judge. This is an action which was brought to recover the damages said to have been suffered by the libellant through the negligence of the respondents, the owners of the tug "Lottie," which tug on the 5th of December, 1898, undertook to tow the libellant's sectional barge "James," with a cargo of coal, from a pier at Greenwich Point on the Delaware River to Eddystone, about 12 miles down the river. The barge was first taken alongside the tug and after proceeding in that way about two miles was put astern and towed on hawsers. The barge and her cargo were sunk en route through violence of the weather.

The libellant alleges that the weather was stormy and unfit for the towing; that the towage was undertaken by the tug notwithstanding the protest of the master of the barge; that the tug should not, in any event, have continued beyond Horse Shoe Bend, about two miles from the starting place; that the change of the barge from along-

side to astern caused her to get in the trough of the sea and ship large quantities of water; that the hawsers used by the tug in towing were old, rotten and unfit for service, and parted during the towing, subjecting the barge to additional danger.

The respondents deny all the allegations of fault and allege that the weather at starting was fine, without indications of any approaching storm, and that the towing was with the consent of the master of the barge; that everything went well until the vessels reached a point about two miles below Horse Shoe Bend, when the wind, which had been light from the westward, suddenly veered around to the south and began to blow hard, raising some sea; that about this time the twisting or hinge sticks, which held the sections of the barge together, dropped out and it was then impossible to tow the sections alongside and they were dropped astern, and the master of the tug turned the tow around with the intention of seeking harbor in the Schuylkill River, but the tow was unmanageable and shortl after, first one and then the other of the sections sank; that the hawsers did not part but were cut to prevent the tug from being pulled down.

The testimony is in direct conflict upon the conditions of the weather at the commencement of, and during the voyage up to the time of the sinking of the barge, but the probabilities are altogether in favor of the libellant's contention in such respect. Although the master of the tug swears positively that the weather was fine up to about 11 o'clock, when there was a sudden change both in direction and velocity, bringing about the disaster in a minute or two, and his testimony is corroborated in some degree, I do not credit the contention.

The preponderance of the proof establishes that the weather was threatening at the start and soon became such that it was dangerous for a tow of this character to proceed, especially below the Horse Shoe Bend, nevertheless the master of the tug kept on until the river became so rough that the sections of the boat were unhinged and separated, bringing about a situation which the tug was unable to cope with, partly because of defective lines.

The captain of the tug was the master mind of the enterprise and upon him devolved the duty of seeing that the tow was not exposed to danger from the weather conditions which prevailed, or which he could reasonably anticipate would attend the voyage. He failed to observe the proper precautions and negligently brought about the loss, without any contributing fault on the part of the master of the barge. White v. Steam Tug Lavergne (D. C.) 2 Fed. 788; The Young America (D. C.) 25 Fed. 207; The Bordentown (D. C.) 40 Fed. 682.

Decree for the libellant, with an order of reference.