### THE ATLANTIC CITY.

### THE WILLIAM THOMAS MOORE.

(Circuit Court of Appeals, Fourth Circuit. February 19, 1917.)

No. 1450.

1. TOWAGE ⟨Key⟩11(1)—DUTIES OF TUG. TO TOW—MEASURE OF CARE AND SKILL REQUIRED—"COMMON CARRIER."

A towing vessel is not a "common carrier,'" and is bound to exercise only reasonable care and skill in performing the service undertaken.

[Ed. Note.—For other cases, see Towage, Cent. Dig. §§ 11, 14, 16, 21.

For other definitions, see Words and Phrases, First and Second Series, Common Carrier.]

2. TOWAGE ⟨Key⟩15(2)—INJURY TO TOW—PRESUMPTION.

The fact of stranding or other injury to a tow does not of itself raise any presumption of negligence on the part of the tug, and the burden of proof is upon the party seeking to charge it with liability.

[Ed. Note.—For other cases, see Towage, Cent. Dig. §§ 34–36.]

3. TOWAGE ⟨Key⟩12(1)—INJURY TO TOW—IMPROPER LOADING.

The master of the vessel towed has control of the loading and is responsible therefor.

[Ed. Note.—For other cases, see Towage, Cent. Dig. §§ 24–26.]

4. TOWAGE ☞15(2)—STRANDING OF TOW—NEGLIGENCE OF TUG.

Evidence *held* insufficient to sustain an allegation that the stranding of a tow was due to negligence or want of skill on the part of the master of the towing tug.

[Ed. Note.—For other cases, see Towage, Cent. Dig. §§ 34–36.]

5. TOWAGE ☞12(2)—STRANDING OF TOW—LIABILITY.

A tug and tow *held* equally liable for the stranding of the tow on a bar; the tow for having assumed the risk of crossing the bar at the time, and the tug being in fault for failing to return to the assistance of the tow after stranding, as agreed.

[Ed. Note.—For other cases, see Towage, Cent. Dig. § 29.]

Appeal from the District Court of the United States for the Eastern District of South Carolina, at Charleston; Henry A. Middleton Smith, Judge.

Suit in admiralty by George E. Jones, master and part owner of the schooner William Thomas Moore, against the steamer Atlantic City; Thomas P. Hammer, claimant, and J. T. Jacobs, master and agent. Decree for libelant, and claimant appeals. Reversed.

Augustine T. Smythe, of Charleston, S. C., and Howard M. Long, of Philadelphia, Pa. (Smythe & Visanska, of Charleston, S. C., on the brief), for appellant.

J. P. K. Bryan, of Charleston, S. C. (Alfred Huger, Huger, Wilbur & Guerard, and Bryan & Bryan, all of Charleston, S. C., on the brief), for appellee.

Before KNAPP and WOODS, Circuit Judges, and DAYTON, District Judge.

KNAPP, Circuit Judge. The case in outline is this: In January, 1914, the Hammer Lumber Company chartered the schooner William Thomas Moore, of which one George E. Jones was master and part owner, to take a cargo of lumber from its mill at Little River, S. C., to the city of New York. Accordingly, in March following, the schooner came to Little River light and was towed to the wharf of the lumber company. The loading was completed the 26th of that month, and on the morning of the 28th the schooner was taken in tow by the steamer, or steam tug, Atlantic City, for the purpose of towing her down Little river and across the bar on her way to the sea. While thus in tow the schooner grounded on the bar and the steamer was unable to release her. She remained stranded for some 13 days, when she was pulled off in a damaged condition by the revenue cutter Seminole. For the injuries resulting from this mishap the master of the schooner libeled the Atlantic City, and in the court below got a decree for $4,750, beside costs and expenses, from which decree this appeal is taken.

The steamer is alleged to be liable (1) for attempting to take the schooner out when it was unsafe to do so; (2) for negligent and unskillful navigation; and (3) for conduct after the stranding which amounted to an abandonment of the schooner. To the first charge it is replied that the schooner assumed the risk of proceeding; the other

·charges are denied. The testimony was taken by deposition, and none of the witnesses was examined in open court.

[1-3] It is well settled that a tug, or other vessel acting as such, is not a common carrier. The Margaret, 94 U. S. 494, 24 L. Ed. 146. She is only bound to exercise reasonable care and skill in performing the service which she has undertaken. The fact, therefore, that an accident happens to the tow does not of itself give rise to any presumption of negligence on the part of the tug, and the burden of proof is upon the party seeking to charge the tug with liability. The L. P. Dayton, 120 U. S. 337, 351, 7 Sup. Ct. 568, 30 L. Ed. 669; The J. P. Donaldson, 167 U. S. 599, 603, 17 Sup. Ct. 951, 42 L. Ed. 292. The master of the vessel towed has control of the loading and is responsible therefor. The Giles Loring (D. C.) 48 Fed. 463, 469; Tweedie Trading Co. v. Clan Line Steamers, 207 Fed. 70, 124 C. C. A. 630; Olsen v. U. S. Shipping Co., 213 Fed. 18, 129 C. C. A. 607. These citations are sufficient to illustrate the general rules of law applicable to the instant case.

As to the first charge: Jones, the master of the schooner, was not unacquainted with Little river channel and bar. He had gone in and out there six or eight times at least, had been present and observed when soundings were taken, and must have been aware that his heavily loaded vessel could not be towed through this narrow and crooked channel, under the conditions then existing, without difficulty and some hazard. Indeed, it was provided in the charter party that "in· ·case the bar or channel at Little River changes, so that it is unsafe for vessel to go there, it is mutually agreed that this charter shall be canceled," on terms stated. Jones, it is true, did not have the same long and constant familiarity with the channel as Jacobs, the master of the steamer; but the conceded facts in this regard satisfy us that he had sufficient knowledge of the situation to be capable of forming an intelligent judgment as to whether it was prudent to attempt to go to sea on the day in question.

The record shows sharp dispute as to what was said in the conversation between Jones and Jacobs on the morning of the 28th, before the schooner was taken in tow. Jones testified in substance that he left the matter to the judgment of Jacobs, and relied entirely upon the latter's assurance that there was sufficient water on the bar to take the schooner out safely, and he was corroborated more or less fully by two members of his crew. On the other hand, Jacobs and four other witnesses, two at least of whom appear to be wholly disinterested, testified in effect that Jacobs said he would take the schooner out only at her own risk. Without reviewing this conversation in detail, it is sufficient to say that in our opinion the clear preponderance of testimony supports the conclusion that Jones assumed the risk, not of unskillful navigation by Jacobs, but of undertaking the passage at all at the time it was attempted. Nor does it seem to us improbable that this was the understanding. The schooner was ready to go to sea when her loading was finished on Thursday afternoon, the 26th, and both captains apparently thought it unsafe on Friday, because of the state of the water and winds throughout that day. The condi-

tions appear to have been more favorable on Saturday morning and Jones naturally desired to get away as soon as possible. The schooner was under considerable expense and earning no demurrage. Jones was under every inducement to avoid longer delay, and it seems to us not at all surprising that he should decide to take the chance of getting safely through into deep water. In short, we are of opinion, after careful study of the record, that Jones, at least equally with Jacobs, assumed the responsibility of making the attempt which resulted in the stranding of the schooner.

[4] The second charge needs but a word of comment. While there is some conflict of testimony, we think it cannot fairly be said that Jacobs showed any lack of judgment or failed to exercise reasonable care and skill in the effort to get the schooner out to sea. He probably did as well as any pilot could have done in the circumstances. The misfortune which befell the schooner is to be attributed, not to faulty navigation, but to the inherent dangers of the undertaking.

[5] The third charge is not so well refuted. It was about half after 9 when the schooner went aground, and after pulling for some 40 minutes, until the hauser parted under the strain, it was evidently seen that she could not be floated by any further effort of the Atlantic City at that time; and so the steamer started, at the request of Jones, to get assistance, Jacobs promising to return at or before the next high tide, which would be about 12 hours later. On the way to Southport the Seminole was met, and, being told of the accident, went to the relief of the schooner. She got in that vicinity the same afternoon, but her draft did not permit her to enter the channel, and she lacked appliances for rendering effective aid. Jacobs reported to Stone & Co., the owners, and they sent a smaller tug, which reached the neighborhood of the stranded schooner the next day. It turned out that the Moore floated for a while at high tide Saturday evening, and we think it not unlikely, despite the testimony of Jacobs on this point, that, had he returned as promised, and been nearby at the evening flood tide, he might have been able to get the schooner, which was then afloat on the bar, through the balance of the channel and into deep water. If that had happened, the detention of the schooner would have been brief, and her injury presumably slight. It follows that the failure of the Atlantic City to return promptly to the imperiled schooner does not stand excused.

The case turns entirely on questions of fact, and nothing would be gained by extended discussion of the testimony. The views above expressed indicate our conclusion that both vessels were at fault, and that the damages to the Moore, already ascertained, should be borne equally by both of them, under the rule laid down in The Max Morris, 137 U. S. 1, 11 Sup. Ct. 29, 34 L. Ed. 586, and frequently since applied.

The decree is accordingly reversed, and the case remanded for further proceedings not inconsistent with this opinion.

Reversed.