### THE BENJAMIN H. WHORFORD.

### THE NATHANIEL P. DOANE.

(District Court, E. D. New York. June 25, 1923.)

Towage ⬙11(9)—Tug held negligent in leaving port in threatening weather and liable for injuries to tow.

   A tug, which with a number of others had been lying for several days at New London on account of weather conditions, held negligent in leaving on a 12-hour run with a tow of four barges in the face of a falling barometer and other indications of storm, which kept the other tugs with one exception in port, and further negligent in not returning or seeking refuge when a short distance out the weather became more threatening, which negligence rendered her liable for injuries to the barges, which were without motive power, by stranding and collision when they went adrift from parting of their lines.

In Admiralty. Suit by William D. Ditmar, owner of the barges Benjamin H. Whorford, Edgar, Jr., Eddie, and W. S. Alden, against the tug Nathaniel P. Doane. Decree for libelant.

Macklin, Brown & Van Wyck, of New York City, for libelant.
Blodgett, Jones, Burnham & Bingham, of Boston, Mass., for claimant.

CAMPBELL, District Judge. This is a suit in admiralty to recover damages for the stranding of the barges Benjamin H. Whorford, Edgar, Jr., and Eddie, alleged to have been caused by the steam tug Nathaniel P. Doane, and from damages alleged to have been caused to the barge W. S. Alden by the steam tug Nathaniel P. Doane coming into collision with her.

---

⬙For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

On the 30th day of September, 1920, the steam tug Nathaniel P. Doane was lying at New London Harbor, where she had been lying for some days because of the condition of the weather. The Nathaniel P. Doane had the choice of taking a tow east or a tow consisting of the four scows above named west, and the master of the said steam tug Nathaniel P. Doane determined to take one or the other of said tows on that day, and because of what he considered the greater dangers of going east he determined to take the above-mentioned tow, which was bound west, through Long Island Sound to New Haven, about a 12-hour trip from New London.

No storm warnings were displayed on the morning of September 30, 1920, at New London for about an hour after the Doane had left with her tow. The New York Herald called attention to the tropical storm that was moving northward, which the master of the Doane said he had never read. The Boston Globe and Boston American for September 29, 1920, did not give warning of a storm, but predicted fair and cooler weather and fresh southwest and west winds.

I do not believe that the master of the Doane read the weather reports in either the Boston Globe or Boston American, but it affirmatively appears that the barometer was steadily falling, and had been steadily falling for some days before September 30, 1920. It also appears that there were other steam tugs lying with tows on September 30, 1920, in the harbor at New London, which had been there for some days before September 30, 1920, and that none of those steam tugs left at or before the time alleged in this suit, except a Red Ball tug going east. The barometer, which had been steadily falling, indicated a storm, and the weather reports in the Boston Globe and Boston American warned of fresh west to southwest winds.

On the 30th day of September, 1920, at about 8:15 a. m., the said steam tug Nathaniel P. Doane left New London Harbor with said barges in tow, made up in tandem fashion, bound for New Haven, in the following order: The W. S. Alden being ahead, the Edgar, Jr., second, the Eddie third, and the Benjamin H. Whorford fourth. The said barges were all ordinary coal barges and light. The Doane had the tow on a hawser about 200 feet long and a bridle, and coming out of the harbor the barges were snugged up, but on reaching the Sound the barges dropped back apart about 60 or 75 feet, pursuant to agreement and according to custom, and were on fore and aft or corner lines supplied by the barges, running from the after corners of one barge to the forward corners of the next barge.

The falling of the barometer before the Doane left New London with the tow, and the drizzling rain falling at the time of leaving, indicated a storm, although the sea was smooth, and there was a southerly wind and an easterly tide, which made the wind and tide against the Doane and her tow. The wind and sea increased as the Doane and her tow proceeded westward, and when about off the Cornfield Light the wind was blowing hard and the sea was getting heavy, and the indications of a storm were such that they could not have been mistaken by a man with the experience of the master of the Doane, and he had the opportunity to choose whether to return to New London, go into Duck Island Sound, or proceed.

290 F.—52

·' He chose the latter course, and when near Falkner Island the heavy sea caused the port line from the Edgar, Jr., to the W. S. Alden to part because of the strain imposed thereon by the three last barges of the tow. A new line was gotten out and again the tow proceeded. About 3 o'clock p. m. it arrived to the north and east of Falkner Island, and lay under the lea of the island until about 8 o'clock p. m., when, the tide having turned to the westward and there being a lull in the wind, the Doane again proceeded with her tow on her course.

The wind again began to blow heavily and the sea became high, and both wind and sea increased until the Doane with her tow was in the vicinity of Branford Reef, when a heavy squall caused the corner lines between the Edgar, Jr., and the Eddie to part, and the Eddie and the Benjamin H. Whorford to go adrift. The Doane succeeded in getting a hawser to these two barges and proceeded with her tow; the W. S. Alden and the Edgar, Jr., on one hawser, and the Eddie and Benjamin H. Whorford on the other hawser. A short time afterward the Edgar, Jr., broke adrift, and the Doane succeeded in getting a line from her to this barge. Shortly thereafter the Benjamin H. Whorford again broke away, but the Doane succeeded in getting a line to her. The Doane then proceeded with each barge on a separate line from her. The wind continued to increase in strength, and the Doane and her tow were well in toward the Connecticut shore.

When nearing New Haven a heavy squall struck the tow, and the barges Edgar, Jr., Eddie, and Benjamin H. Whorford broke away and drifted into shoal water on the Connecticut shore, and the Doane was unable to pick them up. The W. S. Alden was still on the hawser from the tug. The parted lines from the other barges were dragging from the tug. The Doane tried to assist the other barges, and in maneuvering to make New Haven the barge W. S. Alden was brought in contact with the tug Doane and received injuries. The Doane then towed the Alden into New Haven. In the morning the Doane went out in search of the three barges which had gone adrift, and discovered them on the shore.

The tug Doane did all that she could to care for the tow after leaving Falkner Island, but the real question presented in this case is whether the Doane was guilty of negligence in starting with the tow from New London under the conditions prevailing at the time, or was it an error of judgment? And again, was it negligence on the part of the Doane not to take the tow to a place of safety under the conditions prevailing when she reached Cornfield Light, or was it simply an error of judgment to continue on her course?

Much testimony was offered on the part of the Doane to show that it would have been difficult to enter Duck Island Sound, and that it would not have been a safe harbor for the Doane and her tow under the conditions prevailing at the time, of which I am not convinced; but if these facts were true, and they must have been believed by the master of the Doane, then he was obliged to use more care in venturing on the voyage to New Haven, which would take 12 hours under normal conditions, inasmuch as there would have been no harbor of refuge available, if overtaken by the storm which he should have anticipated.

Even if, in order to make Duck Island Sound, a safe refuge for the tow, it was necessary for each boat of the tow to anchor, I find that they were severally fully equipped with proper anchors and cables for that purpose. Falkner Island was not a harbor of refuge, because it would not have been possible to have remained where the Doane and her tow anchored for any length of time with a change of wind and tide.

. The barometer had been falling steadily for some time, boats had been kept at New London because of the weather conditions, and only one other tug went out from New London on September 30, 1920, at or before the time the Doane left with her tow. I am of the opinion that the Doane was guilty of negligence in taking out her tow under the weather conditions then prevailing, which to my mind clearly indicated the approach of a storm; that, even had there been simply an error of judgment on the part of the master of the Doane in leaving New London with her tow at that time, I do not see how he could have failed to recognize the signs of the approaching storm by the time he reached Cornfield Light, and then, if he believed there was no harbor of refuge, he should have turned back to New London, or, if there was a harbor of refuge, made for it; and that the Doane was guilty of negligence by her failure to take one of these courses.

I was not impressed by the testimony given by the master of the Doane, except that, with reference to his leaving New London on the day in question. I was convinced that he had made up his mind to go either east or west on that day, and in the face of all the facts he thought it safer to go west than it would be to go east. I do not believe he gave careful thought to the weather conditions or to the continual falling of the barometer, but, being anxious to keep moving, he took what he thought was the smaller chance.

The log of the Doane was produced (Libelant's Exhibit No. 3) and showed no entries for any time between September 20 and September 30, 1920, and the entry which the master of the Doane said he made that night on his arrival at New Haven cannot be true, because it contains a statement of some things which it is conceded he did not do until the next morning. The statement in the log as to the weather conditions is not correct, and the master himself, on the stand in the instant case, testified that the wind and sea were high before anchoring under the lea of Falkner Island.

The libelant offered in evidence the transcript of record in another suit (Libelant's Exhibit No. 4 for identification), to which objection was made by the representative of the Doane, on which objection I reserved decision; but, libelant not having shown me any authority for receiving the same in evidence, I sustain the objection of the representative of the Doane, with an exception to the libelant, and the contents of the said transcript of record has received no consideration by me.

The master of the Doane said it would have been better to have had double lines between the first and second boat when the first break occurred; but, if there be any blame imputed for failure to have double lines, that would attach to the Doane, as it was the duty of her master to see that the tow was properly made up and with proper lines.

I therefore am of the opinion that the steam tug Nathaniel P. Doane was guilty of negligence in leaving New London Harbor on September 30, 1920, in the face of the impending storm, of which the falling barometer and the weather conditions were a clear indication, and was further guilty of negligence in not turning back to New London or seeking a harbor of refuge, when confronted with the still more unfavorable signs of the weather when off Cornfield Light, and that the damages to the said boats were caused by the said negligence of the Doane. I am further of the opinion that the said boats Benjamin H. Whorford, W. S. Alden, Edgar, Jr., and Eddie were each and all of them boats without motive power and without blame.

A decree may be entered in favor of libelant, with costs, and the usual order of reference may issue.