## THE MERCURY.

(District Court, D. Massachusetts. August 3, 1923.)

No. 2150.

1. Towage ⊂⇒15(2)—Failure to observe and heed weather reports and warnings some evidence of negligence, but not conclusive.

Failure of tug to observe and heed warnings of weather reports issued by weather bureau is some evidence of negligence, but not conclusive proof thereof.

2. Towage ⊂⇒11(9)—Failure of captain to look for storm signals held not proximate cause of subsequent loss.

Loss of tow by tug between Cape Cod Canal and Boston was not proximate result of captain's failure to look for storm signals before leaving the canal, where the warning displayed was not such as would have led reasonably careful navigator to remain at the canal under like circumstances.

⊂⇒For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

3. **Towage** ⊜⟹11(1)—**Tug held only to care and skill of reasonably prudent navigator.**

A tug is not liable as insurer or common carrier, but only held to that degree of care and skill which reasonably prudent navigator would have exercised under similar conditions and circumstances.

4. **Towage** ⊜⟹11(9)—**Captain of tug held not negligent in putting out to sea.**

Captain of tug bound for Boston via Cape Cod Canal with one barge in tow *held* not negligent in leaving the canal in a light westerly wind, though barometer was falling and northwestern storm signals were displayed.

5. **Towage** ⊜⟹15(2)—**Burden on libelant to show loss of tow was result of tug's negligence.**

One libeling tug for loss of tow has burden of showing that loss was direct result of negligence on part of the tug, and sinking of the tow does not of itself give rise to presumption of negligence.

6. **Towage** ⊜⟹11(9)—**Captain of tug held not negligent in not taking refuge in harbor.**

Captain of tug bound for Boston via Cape Cod Canal with one barge in tow *held* not negligent in not seeking shelter in Plymouth Harbor during a storm, where wind did not reach its maximum velocity until he had passed such harbor.

In Admiralty. Libel by the Marine Fuel & Chartering Corporation against the steam tug Mercury. Libel dismissed.

Blodgett, Jones, Burnham & Bingham, of Boston, Mass., for libelant.
John T. Batchelder, of Boston, Mass., and William J. Martin and Foley & Martin, all of New York City, for claimant.

BREWSTER, District Judge. This is a proceeding in rem against the tug Mercury brought to recover the value of a cargo of coal lost with the barge Dunmore, which foundered about one mile off Minot's Light on December 21, 1921.

The tug and tow left New London early in the morning of December 20, 1921, bound for Boston via the Cape Cod Canal. The Dunmore was a flat-bottomed wooden barge of about 1,200-ton capacity with rounding bow and stern. She was well built, in good state of repair, was seaworthy, but "towed hard" and "steered badly." She carried a cargo of 1,019 tons of coal, and her crew consisted of captain and deck hand. The tug with her tow proceeded on her way, passing Wing's Neck Light at the western entrance of the canal about 9:40 a. m. on the morning of December 21, 1921, entered the canal, and passed out of the eastern entrance at Sandwich about 12:10 p. m. of the same day. Light snow had fallen from early morning until about 9:30 a. m., the sky was overcast, and a light westerly wind prevailed at noon. The barometer on the Mercury had gradually fallen from 30.09 at 1:55 a. m. to 29.80 at 12:10 p. m. Shortly after 10 a. m. northwest storm signals were displayed both at Wing's Neck Light and Sandwich Light. The captain of the tug had noticed the fall of the barometer but had not seen or looked for storm signals. He made the tow fast at the end of a hawser of about 160 fathoms in length and proceeded on his way to Boston without delay. It is claimed by the libelant that under the conditions of the weather as it existed and as

⊜⟹For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

it had been forecasted the captain failed to exercise that degree of prudence which the law required of him when he elected to go on to Boston instead of waiting at Sandwich for more favorable weather.

[1] It is well settled that failure to observe and to heed warnings and weather reports issued by the weather bureau is some evidence of negligence. Nicholson v. Erie Railroad Co., 255 Fed. 54, 166 C. C. A. 382; Dempsey v. Maryland Transportation Co. (D. C.) 269 Fed. 665. But failure to observe signals is not conclusive proof of negligence. Nicholson v. Erie Railroad Co., supra.

[2] If the warning indicated weather that would not have led a reasonably careful navigator to remain at the canal under like circumstances, then I take it the tug cannot be held liable if the captain, acting upon such information as he had, decided to put out to sea, even though he neglected to avail himself of all the information at hand. In such a case it cannot be said that the loss was the proximate result of his failure to look for storm signals.

[3] It is equally well established that a tug is not liable as an insurer, or as a common carrier. She is only held to that degree of care and skill which a reasonably prudent navigator would have exercised under similar conditions and circumstances, or as stated in The W. H. Baldwin (C. C. A.) 271 Fed. 411:

"Navigators are not to be charged with negligence unless they make a decision which nautical experience and good seamanship would condemn as unjustifiable at the time and under the circumstances shown."

See, also, The Margaret, 94 U. S. 494, 24 L. Ed. 146; Winslow v. Thompson, 134 Fed. 546, 67 C. C. A. 470; The Atlantic City, 241 Fed. 62, 154 C. C. A. 62.

[4] To hold the Mercury liable because her captain did not tarry at the canal is equivalent to declaring it, as a matter of law, to be negligence to sail from Sandwich to Boston in the face of northwest storm signals and any barometrical depression. This I am not prepared to do in view of the evidence before me. Upon this evidence I find these material facts to exist: (1) When the tug left Sandwich there was a light westerly wind, snow had ceased to fall, an off-shore wind might well be expected to continue; (2) the captain was justified in believing that he could make Boston Harbor before the weather would become unfavorable to such an extent as to render the voyage hazardous; (3) a northwest storm is not regarded by seamen familiar with sailing conditions between the Cape and Boston as likely to be attended with any unusual risk to a tug with one well-constructed seagoing tow; (4) the storm actually encountered was not so extraordinary that a safe voyage might not reasonably have been expected. The storm at no time went beyond what the weather bureau would classify as a moderate gale. The sea was "short and choppy," but one that the tow might well have been expected to meet without unusual danger, and (5) a sailing vessel put out to sea a few minutes after the tug left the canal.

The Dunmore sank without any signal of distress or other warning about 9 o'clock p. m. when the tug was about one mile from Minot's Light.

Although the barge had been sheering somewhat, nothing had happened to indicate that the tow was undergoing unusual difficulties. A few minutes before the accident the captain looked back and saw the lights on the barge and saw no evidence of distress, and then suddenly the tug lurched forward, and upon looking back again the captain discovered that the barge had disappeared and no trace of her was ever found. The hawser was in all respects intact, and it probably never will be known just what happened.

In the light of subsequent events it is easy to say that the captain would have displayed better judgment by remaining at the canal, but if he made a mistake in this regard, which is doubtful, such a mistake in judgment would not be sufficient, in my opinion, to charge the tug with negligence, because I am satisfied on all the evidence that "nautical experience and good seamanship" would not condemn his decision as unjustifiable at the time and under the circumstances.

[5] The burden is upon the libelant to show that the loss of the barge was the direct result of negligence on the part of the tug, and the fact that an accident happened to the tow does not of itself give rise to any presumption of negligence. The Atlantic City, supra; Standard Transportation Co. v. Great Lakes Towing Co. (C. C. A.) 270 Fed. 215; The Clarence L. Blakeslee, 243 Fed. 365, 155 C. C. A. 145.

Upon all the evidence, therefore, I have reached the conclusion that the tug was not negligent and did not fail in the performance of her legal duty in leaving the canal at noon on December 21st.

[6] It is also claimed by the libelant that the tug was negligent in failing to take refuge in Plymouth Harbor. It appears from the evidence that there is anchorage ground just off Saquish Neck, but the witnesses were not in accord as to the desirability or safety of the ground as a place for anchoring barges under tow. If I thought that the tug was under obligations to seek a harbor of refuge under the weather conditions that existed between 3 and 4 o'clock when the tow was passing Plymouth Harbor, I should find that the tug would not be excused from seeking shelter at Plymouth by reason of the fact that the harbor did not afford better facilities. But at that time the weather was clear, with a strong northwest wind, and had not then become so unfavorable as to render it hazardous for the tug to proceed on her way to Boston. It was not until the tug was some distance beyond Plymouth that the wind reached its maximum velocity, and when no more danger would be incurred in running on to Boston Harbor than in turning about and sailing back to Plymouth. Moreover, in view of findings above alluded to, I very much doubt whether at any time did the storm become so violent or the weather so heavy as to require a prudent navigator to take shelter having regard to the fact that the wind came from a westerly quarter which gave the protection of a lee all the way and a sea not difficult to contend against even with strong winds.

I have given careful consideration to the cases cited by the libelant where the tug has been held to be at fault in proceeding on her way under unfavorable conditions (The Bordentown [D. C.] 40 Fed. 682;

The Vandercook [D. C.] 65 Fed. 251; Tucker v. Gallagher [D. C.] 122 Fed. 847; The Salutation [D. C.] 239 Fed. 421), and in failing to seek a harbor when overtaken by storm (Southern Towing Co. v. Egan, 184 Fed. 275, 106 C. C. A. 417; William H. Yerkes, Jr. [D. C.] 214 Fed. 881; The Richard F. Young [D. C.] 245 Fed. 499; The Nathaniel P. Doane, 290 Fed. 816, decided in District Court for Eastern District of New York June 25, 1923).

In my opinion these cases are distinguishable on the facts. They do not convince me that on the evidence before me I ought to find negligence in the decisions and acts of the master of the tug.

The libel, therefore, should be dismissed, with costs.