## THE MERCURY.

(Circuit Court of Appeals, First Circuit. November 11, 1924.)

No. 1702.

1. **Towage** ☞11(9)—**Tug not to take large chances as to weather, in view of place, season, and poor seagoing qualities of barge in tow.**

Under rule of reasonable care and prudence, a tug towing a barge not built or shaped to withstand heavy seagoing buffeting could not take large chances as to bad weather in coming up the Atlantic Coast in December.

2. **Towage** ☞11(9)—**Tug's duty to look for storm signal flags.**

It is the duty of navigators of tug with barge in tow to look for storm signal flags, particularly where the barometer has for some time been dropping rapidly.

3. **Towage** ☞11(9)—**Tug held negligent in attempting to make trip, and liable for loss of barge in storm.**

Considering the poor seagoing qualities of the barge in tow, the season of the year, the falling barometer, the weather signals unobserved or disregarded, *held*, the tug was negligent in attempting, and persisting in the attempt, to make the trip from Cape Cod Canal to Boston; and loss of the barge, which foundered in the gale, consistent with, and not substantially worse than, what should have been anticipated from the signals, was due to failure to exercise the requirements of reasonable care and prudence.

Appeal from the District Court of the United States for the District of Massachusetts; Elisha H. Brewster, Judge.

Libel by the Marine Fuel & Chartering Corporation against the steamtug Mercury, of which the Neptune Line, Inc., was claimant. Libel dismissed (291 F. 797), and libelant appeals. Reversed and remanded.

Edward E. Blodgett, of Boston, Mass. (Foye M. Murphy and Blodgett, Jones, Burnham & Bingham, all of Boston, Mass., on the brief), for appellant.

W. J. Martin, of New York City (John T. Batchelder, of Boston, Mass., and George V. A. McCloskey and Foley & Martin, all of New York City, on the brief), for appellee.

Before BINGHAM, JOHNSON, and ANDERSON, Circuit Judges.

ANDERSON, Circuit Judge. This admiralty appeal challenges the District Court's conclusion (The Mercury, 291 F. 797) that the tug Mercury was not at fault for the loss of the barge Dunmore, which foundered about a mile off Minot's Light on December 21, 1921, with the loss of three lives and the cargo now sued for.

The tug and tow left New London early in the morning of December 20, 1921, bound for Boston via the Cape Cod Canal. The barge was a flat-bottomed, wooden barge of about 1,200 tons capacity, with bow and stern slightly rounded. She carried a cargo of 1,019 tons of coal. She drew 13 feet and her free board was about 2½ feet. The crew consisted of two men, and the master's wife was also aboard. There was some, though rather slight, difference of opinion, as to her seagoing qualities. She was seaworthy, so far as being in a good state of repair; but it is clear that she was not built or shaped to withstand heavy ocean buffeting. There is no doubt that, as the District Court found, she "steered badly" and "towed hard."

[1] It is plain that, under the rule of reasonable care and prudence, a navigator handling such a tow could not take large chances as to bad weather in coming up the Atlantic Coast in December. Winslow v. Thompson, 134 F. 546, 67 C. C. A. 470; The Bordentown (D. C.) 40 F. 682, 685; The Vandercook (D. C.) 65 F. 251; Tucker v. Gallagher (D. C.) 122 F. 847.

[2] The tug with her tow reached Wing's Neck Light, at the western entrance of the Canal, about 9:40 a. m. December 21, 1921. At or very shortly after that time northwest storm signals were there displayed at the Government Weather Bureau. There is some dispute as to whether they were put up before or after the tug had passed the station; but that discrepancy is of little or no importance. The navigators of the tug testified that they did not see the signals. The captain who brought the tug to that point left it at Buzzard's Bay; the mate had charge from that point on. The tow reached the eastern end of the Canal at about noon on the same day. There is no doubt that the northwest storm signals had then been displayed for an hour and a half. While there is some suggestion that there was not at that time wind enough so as to blow the flags out from the pole, it is plain that if the navigators had looked, as it was their duty to look (The Salutation [D. C.] 239 F. 421), particularly in view of the fact that the barometer had then been steadily dropping since early on the previous morning, they could not have failed to see these signals. On this point the captain's testimony shortly after the accident, before the United States local inspectors at Boston, is

entitled to far more weight than his later and somewhat inconsistent testimony before the trial court; but at the trial he said that his answers before the inspectors were true. He then testified that he left Sandwich breakwater about noon, with the wind light westerly.

"Q. Any storm signals up? A. They said there was, I didn't see them.

"Q. Did you see them when you went out? A. Didn't notice them; I was busy with the barge.

"Q. What is the purpose of storm signals? A. To warn you.

"Q. Why didn't you look for them? A. The reason I didn't look I was busy with the barge.

"Q. If you had looked and seen them, would you have gone out just the same? A. No, I don't think I would."

It is undisputed that this storm signal indicated a northwest gale due at any time from 6 to 24 hours.

Besides these unseen and thus disregarded storm signals, the barometer was dropping rapidly enough so as to make navigators, responsible for such vessels as this barge, cautious. Dempsey v. Trans. Co. (C. C. A.) 279 F. 94, 97.

On the weight of the evidence, the weather actually encountered was what the weather bureau had prophesied. It was not unprecedentedly worse. While the wind was not heavy when the tow left Sandwich, it increased pretty steadily until at about 9 o'clock, as was entered in the tug's logbook, the "wind was a full gale from the N. N. W., and very cold with a nasty, chop sea." At about that time, the tug took a sudden start as if the hawser had broken. On looking back, the crew of the tug could see nothing of the barge. She apparently went to the bottom with her crew and cargo. No trace of her was ever found. The wind and sea were at that time very heavy, and as the logbook recites, the tug was "greatly tossed about; one of her bunker plates was broken, and her rudder was damaged so that she did not respond thereafter." They cruised about for some time; and being unable to locate the barge or the crew, instead of coming to Boston, turned back to the Canal and telephoned to Boston. The storm continued through the night.

[3] The gist of the case is whether, under all the conditions, such as the seagoing qualities of the tow, the season of the year (Trans. Co. v. Dempsey [C. C. A.] 279 F. 94), the falling barometer, the weather signals, the tug was negligent in attempting, and persisting in the attempt, to make the trip to Boston. The question is one of fact, on all the evidence.

The court below determined this question in favor of the libelee. We are constrained to the reverse view.

It is plain that the tug's failure to observe the storm warnings was strong evidence of negligence. Nicholson v. Erie R. R., 255 F. 54, 166 C. C. A. 382. The captain's testimony that if he had seen the signals he did not think he would have gone out expressed, we think, his sound and honest view of the requirements of reasonable care and prudence when he was trying to excuse himself for failure to see the signals. In the light of this testimony, his subsequent attempts to minimize the significance of the weather indications and the weather conditions actually met, and to exaggerate the seagoing qualities of the tow, cannot succeed.

There is no evidence, not even opinion evidence, on which the accident can be attributed to a cause which ought not to have been reasonably anticipated and avoided. The weather conditions were, as already stated, consistent with, but not substantially worse than, those which should have been anticipated from the storm warnings. But this barge foundered and sank.

As we view the case, the irresistible inference is that this barge, with whose seagoing and steering qualities the tug navigators were entirely familiar, was, and they should have known that it was, unfit to face the sea conditions that they were told by the storm signals and the falling barometer it might, in all reasonable probability, face before it reached Boston. The loss was due, as we are constrained to hold, to failure to exercise that reasonable care and prudence that the law requires. Our construction and application of the evidence in this case is, we think, in full accord with the views expressed in practically all the cases having similarity or analogy to the controlling facts before us. Compare Winslow v. Thompson, 134 F. 546, 67 C. C. A. 470; The Bordentown (D. C.) 40 F. 682, 685; British Columbia Co. v. Mylroie, 259 U. S. 1, 10, 42 S. Ct. 430, 66 L. Ed. 807; Vandercook (D. C.) 65 F. 251; Id., 74 F. 648, 20 C. C. A. 580; Tucker v. Gallagher (D. C.) 122 F. 847.

The decree of the District Court is reversed, and the case is remanded to that court for further proceedings not inconsistent with this opinion; the appellant recovers costs of appeal.