### THE ASHWAUBEMIE. THE PORT COVINGTON. THE DANDY.

### CURTIS BAY TOWING CO. v. BETHLEHEM SHIPBUILDING CORPORATION, Limited.

(Circuit Court of Appeals, Fourth Circuit. January 13, 1925.)

No. 2299.

1. Towage ⬥15(2)—Mere fact that tow is injured does not render tug liable, in absence of affirmative showing of negligence.

Mere fact that a tow is injured does not render tug liable, in absence of affirmative showing of negligence.

2. Towage ⬥11(1, 3)—Tug not insurer of safety of tow, nor responsible for errors of master, if competent seaman exercising due care.

Tug is not insurer of safety of tow, nor responsible for errors of judgment of master, if a competent seaman exercising due care.

3. Towage ⬥15(2)—Those seeking to establish tug's liability for injury to tow must prove negligence.

Negligence is not presumed from mere happening of accident, and those seeking to hold tug liable for damage to tow have burden of proving negligence.

4. Towage ⬥11(6)—Towing company held liable for damages to tow because of improper operation of tugs.

Where towing company, undertaking to move vessel from dry dock to fitting-out wharf, allowed vessel to collide with wharf, held, that the injury was caused by negligent operation of tugs.

5. Towage ⬥15(2)—Interest and costs of survey of damaged vessel held recoverable in libel against tugs for damage to tow.

In libel against tugs to recover for damages to tow, allowance of interest on recovery and of costs of survey of damaged vessel held within discretion of trial court, and not error.

Appeal from the District Court of the United States for the District of Maryland, at Baltimore; Morris A. Soper, Judge.

Libel in admiralty by the Bethlehem Shipbuilding Corporation, Limited, against the Curtis Bay Towing Company, owner and claimant of the steam tugs Ashwaubemie, Port Covington, and Dandy. From a decree for libelant, respondent appeals. Affirmed.

Before WOODS, WADDILL, and ROSE, Circuit Judges.

L. Vernon Miller and George Weems Williams, both of Baltimore, Md. (Marbury, Gosnell & Williams, of Baltimore, Md., on the brief), for appellant.

George W. P. Whip, of Baltimore, Md. (Barry, Wainwright, Thacher & Symmers, of New York City, and Lord & Whip, of Baltimore, Md., on the brief), for appellee.

WADDILL, Circuit Judge. The libel in this case was filed by the Bethlehem Shipbuilding Corporation, Limited, owners and operators of a shipbuilding and dry dock plant at Sparrow's Point, Md., against the Curtis Bay Towing Company, owner and claimant of the steam tugs Ashwaubemie, Port Covington, and Dandy, for the purpose of recovering damages alleged to have been sustained by libelant in the towage or removal of a steamship under construction from one position to another in its yard. Libelant will hereinafter be called the Shipbuilding Company, and the respondent the Towing Company. The facts briefly are:

That on the 17th of October, 1922, the steamship Steelore was under construction by the libelant at its plant, and was lying bow in in dry dock A, being fitted out preparatory to trial and delivery to owners. On that day, the Towing Company undertook to tow the Steelore, then without motive power of her own, from the dry dock A to pier 2 of the fitting-out wharf of said plant. At about 4:15 p. m. the three tugs mentioned arrived at the dry dock, as requested, and stood by off and alongside the north side of pier 3, which projects considerably beyond dry dock A, while the dock was being lowered. The weather was fair, and wind northwest, with a velocity of some 15 or 20 miles an hour. During the lowering of the dock, the master of one of the tugs went aboard and to the bridge of the Steelore, to take charge of the shifting of the ship from the dry dock to the fitting-out wharf. When the Steelore was thus floated, the tug's master in charge of the shifting operation, pulled her clear of dry dock A, and, as this was done, one of the other tugs, under the direction of the master in charge of the shifting, took a position well forward on the port side of the Steelore, and another tug a position on the starboard side of the Steelore. The latter vessel was then maneuvered to a position preparatory to going ahead for her proposed berth on the north side of the fitting-out wharf, and the master in charge of the shifting so managed the tugs and the Steelore as to cause the bow of the steamship to collide with the fitting-out wharf, striking the starboard side of the Steelore, as a result of which she received severe injury.

The Steelore is a large cargo vessel, 575 feet long, 72 feet beam, 32 feet deep, and of approximately 15,300 tons gross, light, and not drawing over 15 or 16 feet at the time of the accident. Libelant alleged that the accident was caused by the negligence, incompetency, and want of care of the respondent and those operating its tugs. Respondent denied liability, and insisted that it in all respects exercised good seamanship in handling the tow, and was in no manner negligent or at fault for bringing about the collision, that it was not an insurer of the safety of the tow, and that it exercised due diligence and the skill required of it in the service. It also denied that the weather conditions were fair, certainly not normal, and, on the contrary, that the wind suddenly and greatly increased during the performance of the work, which tended to increase the danger.

After full consideration of the testimony, the District Court concluded that the accident was brought about solely as the result of want of care and negligence on the part of the respondent, and, upon the damages being agreed upon, entered its decree against it for $2,209.28, and costs, from which decision this appeal was taken.

[1-3] Many assignments of error are made, 26 in number, which it will not be necessary to discuss in detail, as they in substance relate to the same thing; that is, upon whom the liability, if any, under the circumstances of this case, should fall. The question turns almost entirely upon the facts, and there is but little dispute about the law. As contended for by the libelant, the mere fact that a tow receives injury does not render the tug liable. Negligence must be affirmatively shown. The tug is not an insurer of the safety of the tow, nor responsible for errors of judgment on the part of the master, if a competent seaman, exercising due care. Negligence is not presumed from the mere happening of an accident, and the burden of proof of negligence rests upon those seeking to establish the tug's liability therefor. The Atlantic City (C. C. A. 4th Cir.) 241 F. 62, 154 C. C. A. 62; The Clarence L. Blakeslee, 243 F. 365, 156 C. C. A. 145; The W. H. Baldwin (C. C. A.) 271 F. 411.

[4] The judge of the District Court, who saw and heard the witnesses testify, held that the respondent could not escape liability because of the weather conditions, where the velocity of the wind increased during the operation from 15 to 20 miles, that is, 5 miles higher than at the start; that in such conditions, if the increased wind was

sufficient to bring about the disaster, it should have been manifest to experienced seamen, that it was a dangerous undertaking to enter upon, and that to do so was negligence on its part.

The facts seem to sustain the holding of the District Court in the respects indicated. But we go further, as from our view of the case, there was no reason why three tugs of the size of those in question should not have entered upon and concluded the undertaking with safety, and the slight increase in the velocity of the wind suggested would not have materially endangered it, if otherwise conducted in a proper and seamanlike manner.

Moreover, it appears to us that good seamanship would have forbidden the attempted effort to carry the Steelore up into her proposed berth before first placing the Port Covington, a tug then having its line on the stern of the Steelore, in a position to hold the ship up, and that to proceed in advance of so doing was negligence, as it should have been anticipated that, while the Port Covington was changing its position to the starboard side of the ship to get it into position, the Steelore, with nothing to hold her up, would fall rapidly to leeward, and bring about the very disaster that occurred.

[5] Assignments of error 23 and 24 raise the question of the allowance of interest upon the amount of the damages sustained by the Steelore, and the payment of costs and expenses incident to a survey of the damaged ship. The decree for interest from the date of incurring the expense for repairs upon the damaged ship was within the discretion of the trial court, and the allowance of the same, like that of the costs of the survey, is frequently made.

From our view of the case, the District Court was clearly right in its conclusions, and its judgment should be affirmed, with costs.

Affirmed.