## THE MERCER.

## O'BOYLE et al. v. PENNSYLVANIA R. Co. et al.

(District Court, E. D. New York. June 14, 1926.)

No. 3084.

1. **Towage** ⊛14.

Contract of exemption from liability for negligent towing is valid.

2. **Shipping** ⊛41.

Bareboat charter of boat without motive power constitutes demise and makes charterer owner pro hac vice.

3. **Shipping** ⊛54.

If notice to bareboat charterer of boat without motive power, that towing would be done at risk of tow, inured to benefit of tug owner, it would not be liable even to owner of boat.

4. **Shipping** ⊛54—Notice by Director General of Railroads that towing would be at risk of tow held not to continue in force for benefit of railroad company, owner of tug, after federal control ceased, as to subsequent contract.

Notice by Director General of Railroads to charterer of barge, that all towing would be at risk of tow, did not continue in effect after federal control ceased, and enter into subsequent contract of towage by railroad company, owner of tug, unless made part of contract by reference or statute.

5. **Shipping** ⊛54.

Transportation Act 1920, § 208, continuing in force "rates * * * and practices," held not to continue for benefit of railroad company, owner of tug, notice of Director General of Railroad that towage would be at risk of tow (Comp. St. § 10071¼d).

In Admiralty. Suit by Anthony O'Boyle and others against the steam tug Mercer, with the Pennsylvania Railroad Company as claimant; the New York Edison Company being impleaded. Decree for libelants and the Edison Company.

Macklin, Brown & Van Wyck, of New York City, for libelants.

Burlingham, Veeder, Masten & Fearey, of New York City, for claimant.

Beardsley, Hemmens & Taylor, of New York City, for respondent.

CAMPBELL, District Judge. The New York Edison Company was impleaded on the petition of the claimant Pennsylvania Railroad Company, under the fifty-sixth rule in admiralty, and this case was tried on an agreed statement of facts which, so far as they are necessary for consideration at this time, in substance are as follows:

On September 21, 1918, the following letter was sent by registered mail by the Director General of Railroads, operating the Pennsylvania Railroad, or by a duly authorized agent of said Director General of Railroads, to respondent impleaded, the New York Edison Company:

"United States Railroad Administration; W. G. McAdoo, Director General of Railroads, Pennsylvania Railroad—Eastern Lines.

Office, Foot Cortlandt Street,

"New York, N. Y., Sept. 2, 1918.

"The New York Edison Company, Irving Place and 15th Street, New York City—Gentlemen: We beg to inform you that it has become necessary for us to cease being responsible for vessels while in tow of our tugs. On and after September 11, 1918, the following conditions will apply to all work accepted and performed by tugs owned, employed or chartered by the Pennsylvania Railroad Company.

"All towing is done at the risk of the tow. Neither we nor the tugs employed in the service nor the owners shall be responsible for any damage done to the tow through negligence, and the masters and crews of tugs, in the performance of the towage service, shall become the servants of and identified with the vessel or the craft towed, whether singly or with other vessels owned by you and in possession of charterers, and to the shifting of vessels in and around piers and in slips.

"Very truly yours,

"[Signed] D. C. Chase, Supt. Steam Towing."

This letter was received by the respondent impleaded on or about September 3, 1918. In the years 1918, 1919, and up to 12:01 a. m., March 1, 1920, the Pennsylvania Railroad Company and its tugs, including the tug Mercer, were in the sole possession and control of and operated by the United States Government, acting through the United States Railroad Administration, through its Director General of Railroads. At 12:01 a. m., March 1, 1920, pursuant to the Transportation Act approved February 28, 1920, said tugs, including the Mercer, were returned to the possession and control of the claimant.

On March 3, 1920, an oral contract was entered into between claimant and respondent impleaded for towing the libelants' boat Jeremiah Collins from South Amboy, N. J., to a dock of the New York Edison Company at Ninty-Sixth street, East River, New York. On or about March 5, 1920, the Jeremiah Collins, under bareboat charter to the respondent impleaded, was damaged, subsequently filled with water and sank, as a result of the negligence of those in charge of claimant's tug Mercer, while she had said boat in tow pursuant to said oral towing contract.

The claimant Pennsylvania Railroad Company contends that the notice of September 2, 1919, sent out by the Director General of Railroads during federal control, continued in effect after the termination of federal control and inured to the benefit of the Pennsylvania Railroad Company, and that the terms stated in the notice became part of the towage contract entered into between the claimant and the respondent impleaded on March 2, 1920.

[1] A contract of exemption from liability for negligent towing is valid. . The Margaret, 94 U. S. 494, 24 L. Ed. 146; The Atlantic City, 241 F. 62, 64, 154 C. C. A. 62. The same form of notice given by the Director General in this case was upheld in other cases. Graves v. Davis, 235 N. Y. 316, 139 N. E. 280; Id., 236 N. Y. 507, 142 N. E. 261; Ten Eyck v. Director General of Railroads (C. C. A.) 267 F. 974, certiorari denied 254 U. S. 646, 41 S. Ct. 14, 65 L. Ed. 455.

[2] The bareboat charter of the Collins to the respondent impleaded constituted a demise, and the respondent impleaded became the owner pro hac vice. Hastorf v. F. R. Long-W. G. Broadhurst Co., 239 F. 852, 152 C. C. A. 638; White v. Upper Hudson Stone Co., 248 F. 893, 160 C. C. A. 651; Gannon v. Consolidated Ice Co., 91 F. 539, 33 C. C. A. 662.

[3] If the notice sent out by the Director General inured to the benefit of the claimant and became part of the oral contract of towage, then the claimant would not be liable even to the libelant, the owner. Monk v. Cornell Steamboat Co., 198 F. 472, 117 C. C. A. 232.

[4] The question remaining therefore is: Did the notice of September 2, 1918, continue in effect after federal control ceased, and inure to the benefit of the Pennsylvania Rail-

road Company? When the letter of September 2, 1918, was written, an emergency existed, and the necessities of the government took precedence over less important matters.

The claimant was not in control of the tugs from the date of such notice until they were released to it on March 1, 1920; but the government, through its Director General of Railroads, was in control, and he was not the agent of the claimant. Globe & Rutgers Fire Ins. Co. v. Hines (C. C. A.) 273 F. 774; Missouri Pacific R. R. Co. v. Ault, 256 U. S. 554, 41 S. Ct. 593, 65 L. Ed. 1087. The purpose of sending the letter of September 2, 1918, was to relieve the Director General, as representing the United States, of liability.

The sending of such letter was the act of a distinct legal entity, which at the time of the making of the oral contract in question was no longer functioning, and, the Director General not being the agent of the claimant, a different corporate entity, it could not enter into the terms of an oral contract, made with the claimant, unless by reference it was specifically made a part of that contract, or was by some statute made a part of said contract.

[5] Section 208 of the Transportation Act, 41 Stat. at Large, 464 (Fed. Stat. Ann. Supp. 1920, p. 80 [Comp. St. § 10071¼d]), provides as follows:

"Existing Rates to Continue in Effect.

"Sec. 208 (a). *Rates, etc.—Continuance —Changes.* All rates, fares, and charges, and all classifications, regulations, and practices, in any wise changing, affecting, or determining, any part or the aggregate of rates, fares, or charges, or the value of the service rendered, which on February 29, 1920, are in effect on the lines of carriers subject to the Interstate Commerce Act, shall continue in force and effect until thereafter changed by state or federal authority, respectively, or pursuant to authority of law; but prior to September 1, 1920, no such rate, fare, or charge shall be reduced, and no such classification, regulation, or practice shall be changed in such manner as to reduce any such rate, fare, or charge, unless such reduction or change is approved by the Commission."

The notice of September 2, 1918, did not relate to rates, fares, charges, classifications, regulations, and practices in any wise changing, affecting, or determining, any part or the aggregate of rates, fares, or charges, or the value of the service rendered, which on February 29, 1920, were in effect on the lines of the claimant, and therefore the notice was not continued by that act.

Even if the word "practices," as used in said statute, can be construed as relating to any practice other than one relating to rates, fares, and charges, or the value of any service rendered, in effect on February 29, 1920, still, under the agreed statement of facts in the instant case, it does not rise to the dignity of a general practice, equivalent to a departmental regulation, and therefore the effect of the statute was not to cause the Director General's letter of September 2, 1918, to inure to the benefit of the claimant and become part of the said oral contract. New York & Hastings Steamboat Company v. Steam Tug P. R. R. No. 32 et al., U. S. D. C., S. D. of N. Y., decision by Augustus N. Hand, District Judge, April 10, 1923.

A decree may be entered in favor of the libelant against the claimant, Pennsylvania Railroad Company, with costs and the usual order of reference, and in favor of the respondent impleaded, New York Edison Company, dismissing the petition, with costs against Pennsylvania Railroad Company, petitioner.